25 F.3d 1057
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jerry ISIAH, Petitioner-Appellant,
v.
Robert TANSY, Warden, Respondent-Appellee.
 No. 93-2183.
 United States Court of Appeals, Tenth Circuit.
 June 3, 1994.
 
 1
 Before ANDERSON and KELLY, Circuit Judges, and BELOT,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Petitioner-appellant Jerry Isiah appeals the district court's denial of his petition for a writ of habeas corpus. We affirm.
 
 
 4
 While traveling on a bus through Lordsburg, New Mexico, Mr. Isiah stabbed two passengers, killing one of them. A jury found Mr. Isiah guilty but mentally ill on charges of first degree murder and attempted first degree murder. Mr. Isiah is currently serving a life sentence on the murder charge and a sentence of nine years plus two years' parole on the attempted murder charge. On appeal, the New Mexico Supreme Court affirmed his convictions.
 
 
 5
 Mr. Isiah filed a petition for a writ of habeas corpus in the United States District Court for the District of New Mexico, arguing that: (1) the trial court's jury selection and voir dire decisions denied him the right to an impartial jury; (2) the jury instructions deprived him of due process; and (3) the prosecution's questions about his post-arrest silence violated his constitutional rights. The district court denied the petition, finding that the jury selection process and instructions were constitutionally sound and that any error arising from the prosecution's questions was harmless. Mr. Isiah raises the same three issues on appeal.
 
 Jury Selection and Voir Dire
 
 6
 Mr. Isiah argues that the trial court violated his Sixth Amendment right to an impartial jury by limiting his questions to potential jurors about their racial attitudes, by failing to excuse two jurors for cause, and by using an unfair jury selection procedure. On habeas review, a trial court's finding of jury impartiality will be overturned only for "manifest error." Patton v. Yount, 467 U.S. 1025, 1031-32 (1984). Whether a particular juror should have been excused for cause is a finding of fact that will be upheld if "there is fair support in the record for the state court['s] conclusion." Id. at 1038; see also 28 U.S.C. 2254(d)(8). Decisions about jury selection procedures and the scope of voir dire are constitutionally infirm only if they "render the defendant's trial fundamentally unfair." Mu'Min v. Virginia, 500 U.S. 415, ----, 111 S.Ct. 1899, 1905 (1991).
 
 
 7
 During voir dire, Mr. Isiah, a black man, sought extensive inquiry into the racial attitudes of the potential jurors. Although the trial court denied his motions for individual sequestered voir dire and extra peremptory challenges, it did allow the jury to be separated into groups of six for private and specific questions regarding racial bias and mental illness. When questioning the first group, the prosecution asked several questions about whether Mr. Isiah's race would affect the jurors' impartiality. Defense counsel then posed specific questions about recent current events, including statements by sportscaster Jimmy the Greek, Jesse Jackson's candidacy for president, and America's foreign policy towards South Africa. The trial court refused to permit these questions, stating:
 
 
 8
 Mr. Foy, I'm going to let you question these people concerning race, but I don't think this is the place to ask them how they're going to vote for the president and what they think about our foreign policy to South Africa. That's going beyond the realm of this case. These six people have already said the fact that Mr. Isiah is black is not going to have any effect on their decision. Now if you can find something to go into with that, that's fine, but I'm not going to sit here and listen to a discussion on whether Secretary of State Schultz is doing the right thing or not. I don't think that's got anything to do with it.
 
 
 9
 Tape 3 at 708. No objection was made to this ruling. Mr. Isiah now argues that the trial court's limitation deprived him of his right to an impartial jury.
 
 
 10
 The Constitution entitles a defendant to inquire about racial prejudice only when "under all of the circumstances presented there [is] a constitutionally significant likelihood that, absent [such] questioning ..., the jurors would not be [impartial]." Ristaino v. Ross, 424 U.S. 589, 596 (1976). The Supreme Court has identified two such special circumstances: when racial issues are "inextricably bound up with the conduct of the trial," id. at 597, and when the defendant is charged with a capital crime against a victim of another race, Turner v. Murray, 476 U.S. 28, 36-37 (1986). It is clear that "[t]he fact of interracial violence alone is not a 'special circumstance' entitling the defendant to have prospective jurors questioned about racial prejudice." Id. at 35 n. 7; see also Ristaino, 424 U.S. at 597.
 
 
 11
 Here, there is no claim that Mr. Isiah's conduct was racially motivated or that racial issues were inextricably bound up with the conduct of his trial. Cf. Ham v. South Carolina, 409 U.S. 524, 525, 527 (1973)(holding that inquiry into jurors' attitudes towards race was constitutionally mandated when the accused claimed that he was framed in retaliation for his civil rights activities). Further, this was not a capital case. See Trujillo v. Sullivan, 815 F.2d 597, 602 (10th Cir.) (holding that unless defendant was actually sentenced to death, case is treated as a noncapital case), cert. denied, 484 U.S. 929 (1987). As Mr. Isiah did not have a constitutional right to inquire into the jurors' racial beliefs, any limitation placed on such questioning could not have deprived him of his Sixth Amendment rights.
 
 
 12
 Even if the court had been constitutionally required to make a racial prejudice inquiry, the questions asked were sufficient to satisfy this requirement. In Ham, the Supreme Court indicated that the Constitution would be satisfied by posing a "brief, general question ... sufficient to focus the attention of prospective jurors on any racial prejudice they might entertain." 409 U.S. at 527. The Court emphasized that "the trial judge [is] not required to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." Id.; see also Mu'Min, 111 S.Ct. at 1905, 1908 (1991)(holding that after prospective jurors stated they could remain impartial despite exposure to pretrial publicity, voir dire into content of such publicity not constitutionally compelled).
 
 
 13
 Mr. Isiah next argues that the trial court erred in failing to excuse for cause jurors Cataro and Adams, based on their attitudes toward an insanity defense. After reviewing the voir dire responses of juror Adams, who stated that he would listen to and weigh the testimony of experts on mental illness, we hold that the trial court's finding of impartiality was well-supported. Adams' distrust of the insanity defense did not rise to the level of bias or prejudice sufficient to render him unfit to serve on the jury. See United States v. Bedonie, 913 F.2d 782, 798 (10th Cir.1990), cert. denied, 111 S.Ct. 2895 (1991).
 
 
 14
 Although juror Cataro may have admitted such a bias, the court's failure to excuse her for cause did not violate Mr. Isiah's Sixth Amendment rights. After the trial court refused to excuse Ms. Cataro, Mr. Isiah used one of his peremptory challenges to remove her. Because juror Cataro did not actually sit on the jury that convicted him, Mr. Isiah's right to an impartial jury was not abridged. See Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988); United States v. McIntyre, 997 F.2d 687, 698 n. 7 (10th Cir.1993), cert. denied, 114 S.Ct. 736 (1994). The fact that Mr. Isiah was required to exercise one of his peremptory challenges to remove Ms. Cataro also did not violate this right. See Ross, 487 U.S. at 88 ("[W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.").
 
 
 15
 Finally, Mr. Isiah argues that the trial court's jury selection procedures impaired his ability to use his peremptory challenges effectively. He apparently argues that because he could not predict when the judge would refuse to excuse jurors for cause and whether a more prejudiced juror would be summoned on the next panel, he had to hoard his peremptory challenges.
 
 
 16
 We note first that, despite his complaints, Mr. Isiah did not use all of his peremptory challenges in picking the final jury. Even if he had, we see no fundamental unfairness in the procedure used by the trial court to select the jury. Although another method may have been more helpful to Mr. Isiah's exercise of his peremptory challenges, this cannot provide a basis for a constitutional requirement to conduct jury selection in a particular manner. See, e.g., Mu'Min, 111 S.Ct. at 1905 ("To be constitutionally compelled, ... it is not enough that such [procedures] might be helpful. Rather, the trial court's failure [to use a particular procedure] must render the defendant's trial fundamentally unfair.").
 
 Jury Instructions
 
 17
 Mr. Isiah next argues that the jury instructions were erroneous and violated his right to due process. A petitioner such as Mr. Isiah "bears a 'great burden ... when [he] seeks to collaterally attack a state court judgment based on an erroneous jury instruction.' " Lujan v. Tansy, 2 F.3d 1031, 1035 (10th Cir.1993)(quoting Hunter v. New Mexico, 916 F.2d 595, 598 (10th Cir.1990), cert. denied, 500 U.S. 909 (1991))(alteration in original), cert. denied, 114 S.Ct. 1074 (1994). Federal habeas corpus relief is not available for alleged errors of state law, and we examine only " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " Estelle v. McGuire, 112 S.Ct. 475, 482 (1991)(quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).
 
 
 18
 We conclude that the instructions as a whole adequately directed the jury how and when the defense of insanity was to be considered and adequately defined and distinguished between mental illness and insanity. Because there is no reasonable likelihood that the jury applied the challenged instructions in a way that violated the Constitution, Estelle, 112 S.Ct. at 482, Mr. Isiah is not entitled to habeas relief.
 
 Prosecution's Comments
 
 19
 During trial, three events took place which Mr. Isiah argues violated his privilege against self-incrimination and his right to due process. On the first occasion, the prosecution asked a police officer whether Mr. Isiah said anything during the booking procedure. Defense counsel objected, and after a bench conference, the prosecution rephrased the question to inquire about Mr. Isiah's demeanor. The prosecution later asked two other officers about Mr. Isiah's demeanor during his arrest and whether he had said anything to them. Defense counsel did not object to either question and, during cross-examination, repeated the questions to each of the officers.
 
 
 20
 Prosecutorial comment on a defendant's exercise of his right to remain silent may violate both due process and the privilege against self-incrimination. See Doyle v. Ohio, 426 U.S. 610, 619 (1976)(due process); Griffin v. California, 380 U.S. 609, 615 (1965)(self-incrimination). Such constitutional violations are "trial errors," however, which are subject to a "harmless error" analysis. Brecht v. Abrahamson, 113 S.Ct. 1710, 1717 (1993). Trial errors occurring "during the presentation of the case to the jury ... may ... be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless." Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991). On collateral review, we test whether a trial error was harmless by examining "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht, 113 S.Ct. at 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).
 
 
 21
 Assuming, without deciding, that the prosecution's questions violated Mr. Isiah's rights, the references to his silence were so minimal in character as to be harmless.[2] The questions and answers were brief, comprising less than a minute out of approximately twenty hours of testimony. See Brecht, 113 S.Ct. at 1722. On the first occasion, the jury was never actually told whether Mr. Isiah said anything during booking. Although the second and third colloquies informed the jury that Mr. Isiah did not say anything during his arrest, there was no attempt to emphasize or use this testimony to establish guilt or sanity. See United States v. Morales-Quinones, 812 F.2d 604, 613 (10th Cir.1987). Further, in light of the fact that defense counsel elicited the same testimony from the officers, the prosecution's mention of Mr. Isiah's post-arrest silence was merely cumulative. Brecht, 113 S.Ct. at 1722. We conclude that the references to Mr. Isiah's silence had no substantial and injurious effect or influence on the jury's verdict, and that, therefore, any possible error was harmless.
 
 
 22
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 **
 Honorable Monti L. Belot, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 We question whether the questions even violated Mr. Isiah's constitutional rights. See, e.g., Fletcher v. Weir, 455 U.S. 603, 607 (1982)(per curiam)(holding that the use of post-arrest silence did not violate due process absent evidence that such silence followed Miranda warnings); United States v. Morales-Quinones, 812 F.2d 604, 613 (10th Cir.1987)("The test for determining if there has been an impermissible comment on a defendant's right to remain silent at the time of his arrest is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment' on the defendant's right to remain silent.") (quoting United States v. Barton, 731 F.2d 669, 674 (10th Cir.1984))