# ROSS *v.* OKLAHOMA

No. 86–5309.   Argued January 19, 1988—Reargued April 18, 1988—
Decided June 22, 1988

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, BLACKMUN, and STEVENS, JJ., joined, *post,* p. 91.

*Gary Peterson* reargued the cause for petitioner. With him on the briefs was *Thomas G. Smith, Jr.*

*Robert A. Nance,* Assistant Attorney General of Oklahoma, reargued the cause for respondent. With him on the brief was *Robert H. Henry,* Attorney General.*

---

*\*Moses Silverman, John A. Powell, Steven R. Shapiro,* and *Mandy Welch* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

During the selection of the jury in his capital murder trial, petitioner Bobby Lynn Ross resorted to one of his peremptory challenges to remove a juror whom the trial court should have excused for cause under *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968). He claims that because of that fact the Sixth and Fourteenth Amendments to the United States Constitution require reversal of his conviction and sentence of death. We conclude they do not.

In the course of robbing a motel in Elk City, Oklahoma, petitioner killed a police officer. Petitioner was charged with first-degree murder, Okla. Stat., Tit. 21, § 701.7 (Supp. 1987), a capital offense, Okla. Stat., Tit. 21, § 701.9(A) (Supp. 1987). By statute, Oklahoma provides nine peremptory challenges to both parties in capital trials. Okla. Stat., Tit. 22, § 655 (1981).

The jury selection began with the drawing of 12 names from the 150-person venire. Each of the 12 was examined individually by the court and counsel. Prospective jurors not excused for cause after the *voir dire* were provisionally seated. If a prospective juror was excused for cause, a replacement juror was called and examined. After 12 jurors had been provisionally seated, the parties exercised their peremptory challenges alternately beginning with the prosecution. When a juror was struck, a replacement juror was immediately selected and examined in the manner described above. Once a replacement was provisionally seated, the trial court called for the exercise of a challenge by the party whose turn it was. This procedure was repeated until each side had exercised or waived its nine peremptory challenges.

Darrell Huling's name was drawn to replace the juror excused by the defense with its fifth peremptory challenge. During *voir dire*, Huling initially indicated that he could vote to recommend a life sentence if the circumstances were appropriate. On further examination by defense counsel, Hul-

ing declared that if the jury found petitioner guilty, he would vote to impose death automatically. Defense counsel moved to have Huling removed for cause, arguing that Huling would not be able to follow the law at the penalty phase. The trial court denied the motion and Huling was provisionally seated. The defense then exercised its sixth peremptory challenge to remove Huling. The defense ultimately used all nine of its challenges. The prosecution used only five, waiving the remaining four.

None of the 12 jurors who actually sat and decided petitioner's fate was challenged for cause by defense counsel. Petitioner is black; the victim was white. At the close of jury selection, the defense objected "to the composition of the twelve people, in that there were no black people called as jurymen in this case and the defendant feels he's denied a fair and impartial trial by his peers." App. 25. The trial court overruled the objection, and the trial commenced.

After two days of evidence, the parties gave closing arguments, the trial court instructed the jury, and deliberations began. The jury found petitioner guilty of first-degree murder.[1] Following the presentation of evidence and arguments at a separate sentencing proceeding, the same jury found five aggravating circumstances and sentenced petitioner to death.

On appeal, the Oklahoma Court of Criminal Appeals rejected petitioner's argument that the trial court had committed reversible error in failing to excuse Huling for cause:

> "The failure of the trial court to remove a prospective juror who unequivocally states that he is unwilling to follow the law during the penalty phase by considering a life sentence is error. The record reflects that defense counsel challenged the prospective juror for cause, and when the court denied the challenge, defense counsel used

---

[1] Petitioner was also convicted of robbery with a firearm, Okla. Stat., Tit. 21, § 801 (Supp. 1987), and sentenced to 99 years' imprisonment on that charge.

a peremptory challenge. All of [petitioner's] peremptory challenges were subsequently used; but as there is nothing in the record to show that any juror who sat on the trial was objectionable, we are unable to discover any grounds for reversal." 717 P. 2d 117, 120 (1986) (citations omitted).

We granted certiorari, 482 U. S. 926 (1987), to consider the Sixth and Fourteenth Amendment implications of the trial court's failure to remove Huling for cause and petitioner's subsequent use of a peremptory challenge to strike Huling. We now affirm.

In Wainwright v. Witt, 469 U. S. 412 (1985), the Court held that "the proper standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " Id., at 424 (quoting Adams v. Texas, 448 U. S. 38, 45 (1980)). The Oklahoma Court of Criminal Appeals found, 717 P. 2d, at 120, and the State concedes, Tr. of Oral Rearg. 30, that Huling should have been excused for cause and that the trial court erred in failing to do so. Petitioner contends that this error abridged both his Sixth and Fourteenth Amendment right to an impartial jury, and his Fourteenth Amendment right to due process. We reject both grounds offered by petitioner.

It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury. *Witt, supra; Irvin* v. *Dowd,* 366 U. S. 717, 722 (1961). Had Huling sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove Huling for cause, the sentence would have to be overturned. *Adams, supra.* But Huling did not sit. Petitioner exercised a peremptory challenge to remove him, and Huling

was thereby removed from the jury as effectively as if the trial court had excused him for cause.

Any claim that the jury was not impartial, therefore, must focus not on Huling, but on the jurors who ultimately sat. None of those 12 jurors, however, was challenged for cause by petitioner, and he has never suggested that any of the 12 was not impartial. "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Lockhart* v. *McCree*, 476 U. S. 162, 184 (1986). Although at the close of jury selection petitioner did assert that the jury was not fair and impartial, this claim was based on the absence of blacks from the jury panel. Petitioner neither presses that claim before this Court nor suggests that the absence of blacks was in any way related to the failure to remove Huling for cause. We conclude that petitioner has failed to establish that the jury was not impartial.

In arguing that the trial court's error abridged his right to an impartial jury, petitioner relies heavily upon *Gray* v. *Mississippi*, 481 U. S. 648 (1987), but we think that case affords him no help. During the jury selection in *Gray*, the State used several of its 12 peremptory challenges to remove jurors opposed to the death penalty whom the trial court should have excluded for cause under *Witherspoon*. See 481 U. S., at 669 (Powell, J., concurring in part and concurring in judgment); *id.*, at 673 (SCALIA, J., dissenting, joined by REHNQUIST, C. J., and WHITE and O'CONNOR, JJ.). After the State had exhausted all of its peremptory challenges, a prospective juror, Mrs. H. C. Bounds, stated during *voir dire* that although she was opposed to the death penalty she could vote to impose it in appropriate circumstances. Arguing that the previous "for cause" rulings had been erroneous, the State asked the trial court to restore one of its peremptory

challenges so that it might remove Bounds. In an apparent attempt to correct the earlier rulings, the trial court instead excused Bounds for cause. The jury ultimately seated sentenced Gray to death. A closely divided Court reversed Gray's sentence, concluding that the removal of Bounds was erroneous under *Adams, supra*, and *Witt, supra*, and that the error could not be considered harmless. *Gray, supra*.

Petitioner relies heavily upon the *Gray* Court's statement that "the relevant inquiry is 'whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error.'" 481 U. S., at 665 (emphasis in original) (quoting *Moore* v. *Estelle*, 670 F. 2d 56, 58 (CA5) (specially concurring opinion), cert. denied, 458 U. S. 1111 (1982)). Petitioner points out that had he not used his sixth peremptory challenge to remove Huling, he could have removed another juror, including one who ultimately sat on the jury. Petitioner asserts, moreover, that had he used his sixth peremptory challenge differently, the prosecution may have exercised its remaining peremptory challenges differently in response, and consequently, the composition of the jury panel might have changed significantly.

Although we agree that the failure to remove Huling may have resulted in a jury panel different from that which would otherwise have decided the case, we do not accept the argument that this possibility mandates reversal. We decline to extend the rule of *Gray* beyond its context: the erroneous "*Witherspoon* exclusion" of a qualified juror in a capital case. We think the broad language used by the *Gray* Court is too sweeping to be applied literally,[2] and is best understood in

---

[2] As the dissent in *Gray* pointed out, the statement that any error which affects the composition of the jury must result in reversal defies literal application. 481 U. S., at 678 (SCALIA, J., dissenting). If, after realizing its error, the trial court in *Gray* had dismissed the entire venire and started anew, the composition of the jury would undoubtedly have been affected by the original error. But the *Gray* majority concedes that the trial court could have followed that course without risking reversal. *Id.*, at 663–664, n. 13.

the context of the facts there involved. One of the principal concerns animating the decision in *Gray* was the inability to know to a certainty whether the prosecution could and would have used a peremptory challenge to remove the erroneously excused juror. See *Gray*, 481 U. S., at 665; *id.*, at 669–670, and n. 2 (Powell, J., concurring in part and concurring in judgment). In the instant case, there is no need to speculate whether Huling would have been removed absent the erroneous ruling by the trial court; Huling was in fact removed and did not sit.

Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. *Gray, supra,* at 663; *Swain* v. *Alabama,* 380 U. S. 202, 219 (1965); *Stilson* v. *United States,* 250 U. S. 583, 586 (1919). They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. See *Hopt* v. *Utah,* 120 U. S. 430, 436 (1887); *Spies* v. *Illinois,* 123 U. S. 131 (1887).[3] We conclude that no violation of petitioner's right to an impartial jury occurred.

Relying largely on *Logan* v. *Zimmerman Brush Co.,* 455 U. S. 422 (1982), and *Hicks* v. *Oklahoma,* 447 U. S. 343 (1980), petitioner also argues that the trial court's failure to

---

[3] In *Spies*, the petitioners were sentenced to death for their participation in the killing of several police officers at the Haymarket riot. Using a number of their peremptory challenges to excuse jurors unsuccessfully challenged for cause, petitioners eventually exhausted all of their peremptory challenges. See *Spies* v. *People,* 122 Ill. 1, 256–257, 12 N. E. 865, 989 (1887). Before this Court, petitioners argued they had been deprived of a fair trial because numerous biased jurors had not been excused for cause. The Court declined to examine the "for cause" rulings as to the jurors who had been removed by petitioners. 123 U. S., at 168.

remove Huling for cause violated his Fourteenth Amendment right to due process by arbitrarily depriving him of the full complement of nine peremptory challenges allowed under Oklahoma law. We disagree. It is true that we have previously stated that the right to exercise peremptory challenges is "'one of the most important of the rights secured to the accused.'" *Swain, supra,* at 219 (quoting *Pointer* v. *United States,* 151 U. S. 396, 408 (1894)). Indeed, the *Swain* Court cited a number of federal cases and observed: "The denial or impairment of the right is reversible error without a showing of prejudice." 380 U. S., at 219. But even assuming that the Constitution were to impose this same rule in state criminal proceedings, petitioner's due process challenge would nonetheless fail. Because peremptory challenges are a creature of statute and are not required by the Constitution, *Gray, supra,* at 663; *Swain, supra,* at 219, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. Cf. *Stilson, supra,* at 587; *Frazier* v. *United States,* 335 U. S. 497, 505, n. 11 (1948). As such, the "right" to peremptory challenges is "denied or impaired" only if the defendant does not receive that which state law provides.

It is a long settled principle of Oklahoma law that a defendant who disagrees with the trial court's ruling on a for-cause challenge must, in order to preserve the claim that the ruling deprived him of a fair trial, exercise a peremptory challenge to remove the juror. Even then, the error is grounds for reversal only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him. *Ferrell* v. *State,* 475 P. 2d 825, 828 (Okla. Crim. App. 1970); *Stott* v. *State,* 538 P. 2d 1061, 1064–1065 (Okla. Crim. App. 1975). In *McDonald* v. *State,* 54 Okla. Crim. 161, 164–165, 15 P. 2d 1092, 1094 (1932), the court declared:

> "If counsel believed any juror was pledged to return a verdict imposing the death penalty, under the circumstances named, he should have purged the jury by chal-

lenge. He cannot speculate on the result of the jury's verdict by consenting that the juror sit on the panel, and, if the verdict is adverse, then assert he is disqualified."

Thus, although Oklahoma provides a capital defendant with nine peremptory challenges, this grant is qualified by the requirement that the defendant must use those challenges to cure erroneous refusals by the trial court to excuse jurors for cause. We think there is nothing arbitrary or irrational about such a requirement, which subordinates the absolute freedom to use a peremptory challenge as one wishes to the goal of empaneling an impartial jury. Indeed, the concept of a peremptory challenge as a totally free-wheeling right unconstrained by any procedural requirement is difficult to imagine. As pointed out by the dissenters in *Swain, supra,* at 243–244:

"This Court has sanctioned numerous incursions upon the right to challenge peremptorily. Defendants may be tried together even though the exercise by one of his right to challenge peremptorily may deprive his codefendant of a juror he desires or may require that codefendant to use his challenges in a way other than he wishes. *United States* v. *Marchant,* [12 Wheat. 480 (1827)]. A defendant may be required to exercise his challenges prior to the State, so that some may be wasted on jurors whom the State would have challenged. *Pointer* v. *United States,* 151 U. S. 396 [(1894)]. Congress may regulate the number of peremptory challenges available to defendants by statute and may require codefendants to be treated as a single defendant so that each has only a small portion of the number of peremptories he would have if tried separately. *Stilson* v. *United States,* [250 U. S. 583 (1919)]."

As required by Oklahoma law, petitioner exercised one of his peremptory challenges to rectify the trial court's error, and consequently he retained only eight peremptory chal-

lenges to use in his unfettered discretion. But he received all that Oklahoma law allowed him, and therefore his due process challenge fails.[4]

Petitioner relies on *Logan*, 455 U. S. 422 (1982), and *Hicks*, 447 U. S. 343 (1980), to support his claim of a denial of due process. The *Logan* Court held that because of the arbitrary application of a limitations period, Logan had been deprived of a state-provided cause of action in violation of due process. In *Hicks*, the Court overturned on due process grounds the sentence imposed on Hicks because the sentence had not been determined by the jury as required by Oklahoma law. Here, however, the requirement that the defendant use peremptory challenges to cure trial court errors is established by Oklahoma law, and petitioner received all that was due under Oklahoma law.[5]

Although the trial court erred in failing to dismiss prospective juror Huling for cause, the error did not deprive petitioner of an impartial jury or of any interest provided by the State. "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware* v. *Van Arsdall*, 475 U. S. 673, 681 (1986).

*Affirmed.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN, JUSTICE BLACKMUN, and JUSTICE STEVENS join, dissenting.

A man's life is at stake. We should not be playing games. In this case, everyone concedes that the trial judge could not arbitrarily take away one of the defendant's peremptory chal-

---

[4] We need not decide the broader question whether, in the absence of Oklahoma's limitation on the "right" to exercise peremptory challenges, "a denial or impairment" of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been excused for cause. See *Swain* v. *Alabama*, 380 U. S. 202, 219 (1965); cf. *Spies* v. *Illinois*, 123 U. S. 131 (1887); *Stroud* v. *United States*, 251 U. S. 380, 382 (1920), denying rehearing to 251 U. S. 15 (1919).

[5] No claim is made here that the trial court repeatedly and deliberately misapplied the law in order to force petitioner to use his peremptory challenges to correct these errors.

lenges. Yet, that is in effect exactly what happened here. I respectfully dissent.

Neither the State nor this Court disputes that the trial court "erred" when it refused to strike juror Huling for cause from the jury that sentenced petitioner Bobby Lynn Ross to death. Huling twice stated during *voir dire* that if he were to find Ross guilty of murder, he would automatically vote to impose the death penalty; there is no question that Huling was not the fair and impartial juror guaranteed to petitioner by the Sixth Amendment. The Court concludes, however, that the trial court's error does not require resentencing because it was "cure[d]" by the defense's use of one of a limited number of peremptory challenges to remove the biased juror. *Ante*, at 88. I believe that this conclusion is irreconcilable with this Court's holding just last Term that a similar Sixth Amendment error in capital jury selection requires resentencing if "'the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error.'" *Gray* v. *Mississippi*, 481 U. S. 648, 665 (1987), quoting *Moore* v. *Estelle*, 670 F. 2d 56, 58 (CA5) (specially concurring opinion), cert. denied, 458 U. S. 1111 (1982). The Court's attempt to distinguish *Gray* not only fails to persuade, but also fails to protect petitioner's Sixth Amendment right to an impartial jury by condoning a scheme that penalizes the assertion of that right. I am convinced that application of *Gray*'s *per se* resentencing rule in this case is the only course consistent with the Sixth Amendment.

In *Gray*, the trial court granted the State's motion to strike for cause a juror who expressed some reservations about capital punishment, but nonetheless stated that she could vote to impose the death penalty in appropriate circumstances. The trial court's exclusion of this qualified juror was Sixth Amendment error under *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968), and *Wainwright* v. *Witt*, 469 U. S. 412 (1985). The *Gray* Court refused the State's invitation to apply harmless-error analysis to such an error. Specifically,

the Court rejected the argument that the State's retention of unexercised peremptory challenges at the end of jury selection indicated that the error was harmless because the State would have removed the juror by peremptory challenge if the trial court had denied its for-cause motion. In addition, the Court rejected the argument that the error was an isolated incident without prejudicial effect because the ultimate panel fairly represented the commmunity. The Court explained that the contingent nature of the jury selection process "defies any attempt to establish that an erroneous *Witherspoon-Witt* exclusion of a juror is harmless." 481 U. S., at 665. According to the Court, "the relevant inquiry is 'whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error.'" *Ibid.* (citation omitted). The Court recognized that its decision established a *per se* rule requiring the vacation of a death sentence imposed by a jury whose composition was affected by *Witherspoon* error. 481 U. S., at 660, 668.

The Court today unaccountably refuses to apply this *per se* rule in a case involving a similar Sixth Amendment error. Here the trial court, rather than excusing a qualified juror, refused to excuse a biased juror. The defense's attempt to correct the court's error and preserve its Sixth Amendment claim deprived it of a peremptory challenge. That deprivation "could possibly have . . . affected" the composition of the jury panel under the *Gray* standard, because the defense might have used the extra peremptory to remove another juror and because the loss of a peremptory might have affected the defense's strategic use of its remaining peremptories. See *id.*, at 665 ("A prosecutor with fewer peremptory challenges in hand may be willing to accept certain jurors whom he would not accept given a larger reserve of peremptories"). Even the Court acknowledges that the defense's loss of a peremptory meets the *Gray* test. See *ante*, at 87 ("[T]he failure to remove Huling may have resulted in a

jury panel different from that which would otherwise have decided the case").

Indeed, the loss of a peremptory challenge in this case affected the composition of the jury panel in precisely the same way as the trial court's error in *Gray* itself. In *Gray,* the defendant was deprived of a juror who, although inexcusable for cause, seemed to be sympathetic to the defense in that she had expressed reservations about the death penalty. The defense in the instant case was deprived of an opportunity to remove an otherwise qualified juror whom it perceived to be sympathetic to the prosecution. The defense's loss of a peremptory challenge thus resulted in a "'tribunal organized to return a verdict of death'" in exactly the fashion we rejected so recently in *Gray.* 481 U. S., at 668, quoting *Witherspoon, supra,* at 521.

The Court attempts to distinguish *Gray* in two ways. First, the Court dismissively declares that the *Gray* standard is "too sweeping to be applied literally." *Ante,* at 87. The Court offers only one reason for narrowing *Gray*'s broad language: if any Sixth Amendment error that ·"could possibly have . . . affected" the composition of the jury requires reversal, a trial court could never dismiss the venire and start anew, because the jury resulting from the new venire would necessarily be different from the one that would have been empaneled in the absence of the original error. *Ante,* at 87, n. 2. This argument misses the point of the *Gray* decision. The *Gray* Court did not hold that a defendant has the right to any particular venire or panel; rather, the Court held that a defendant has a right to a jury selection procedure untainted by constitutional error. Because it is impossible to be sure that an erroneous ruling by the trial court did not tilt the panel against the defendant, a death sentence returned by such a panel cannot stand. A wholly new venire does not pose the same problem of "tilting" as the result of constitutional error. Thus, the Court is simply wrong that the *Gray* standard would prevent a trial court from correcting an erro-

neous ruling by starting anew. The Court's unwillingness to apply the *Gray* standard "literally" is without foundation.

Second, the Court attempts to limit *Gray* by distinguishing it factually from the instant case. The Court correctly notes that "[o]ne of the principal concerns animating the decision in *Gray* was the inability to know to a certainty whether the prosecution could and would have used a peremptory challenge to remove the erroneously excused juror." *Ante*, at 88, citing 481 U. S., at 670, n. 2 (Powell, J., concurring in part and concurring in judgment). The Court then attempts to distinguish the instant case as follows: "In the instant case, there is no need to speculate whether Huling would have been removed absent the erroneous ruling by the trial court; Huling was in fact removed and did not sit." *Ante*, at 88.

The Court again misses the point of the *Gray* Court's reasoning. *Gray* did not indicate that the use of peremptory challenges always "cures" erroneous for-cause rulings. Rather, the *Gray* Court reasoned that if it could be sure that the prosecution would have excused the erroneously excused juror by use of a peremptory challenge, and if it could be sure that the composition of the jury panel would thereby *be identical* to the jury that was empaneled as a result of the error, then there would be no need for reversal. Because the Court could not be certain of the former point, reversal was required. In the instant case, although the Court can be sure that a peremptory challenge was in fact employed in an attempt to cure the erroneous for-cause ruling, the Court cannot be sure that the composition of the jury panel was thereby unaffected—as the Court itself acknowledges. See *ante*, at 87. Reversal is therefore required in the instant case as well, as the very portion of Justice Powell's concurrence in *Gray* that is quoted by the Court clearly establishes: "the only question is whether there is a reasonable doubt that the composition of the venire would have been different as a result." 481 U. S., at 670, n. 2.

The only argument that might successfully distinguish the instant case from *Gray* is implicit in the Court's holding, although not expressly made. The Court leaves undisturbed *Gray*'s rule that constitutional error in jury selection requires reversal if it changes the composition of the jury, but the Court holds that reversal is not required if state law requires a party to attempt to correct such error and this attempt leads to a change in jury composition. Under this view, any change in the composition of the jury wrought by the loss of a defense peremptory in the instant case was the result not of the trial court's error, but of the defense's attempt to cure that error pursuant to state law; the defense's use of a peremptory challenge was an intervening cause that broke the causal link between the trial court's error and the change in jury composition.

This "intervening cause" argument does distinguish the instant case from *Gray*, but it engenders serious constitutional problems of its own. The State's requirement that a defendant employ a peremptory challenge in order to preserve a Sixth Amendment claim arising from a trial court's erroneous for-cause ruling burdens the defendant's exercise of his Sixth Amendment right to a impartial jury. It is undisputed that petitioner had a Sixth Amendment right to be sentenced by a jury on which juror Huling did not sit. Yet the only way for petitioner to preserve this right under state law was to give up one of a limited number of peremptory challenges. We have emphasized that the ability to exercise peremptory challenges is "one of the most important of the rights secured to the accused," *Pointer* v. *United States*, 151 U. S. 396, 408 (1894), and that it "long has served the selection of an impartial jury," *Batson* v. *Kentucky*, 476 U. S. 79, 99, n. 22 (1986). It cannot seriously be questioned that the loss of a peremptory challenge vis-à-vis the prosecution burdens the defense in pretrial proceedings.

A venerable line of this Court's precedents has held that legislative schemes that unnecessarily burden the exercise of

federal constitutional rights cannot stand. Just a few examples from the criminal context suffice to establish this principle. In *United States* v. *Jackson*, 390 U. S. 570 (1968), the Court struck down a provision of the Federal Kidnapping Act that rendered eligible for the death penalty only defendants who invoked their right to trial by jury. The Court recognized that Congress' goal in enacting the provision was legitimate, but held that "[w]hatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights." *Id.*, at 582. And in *Brooks* v. *Tennessee*, 406 U. S. 605 (1972), the Court struck down a state law that required a defendant who wished to testify on his own behalf to be the first defense witness presented. We noted that the state law at issue "exacts a price for [the defendant's] silence by keeping him off the stand entirely unless he chooses to testify first," *id.*, at 610, and that it therefore "casts a heavy burden on a defendant's otherwise unconditional right not to take the stand," *id.*, at 610–611.

The Court today ignores the clear dictates of these and other similar cases by condoning a scheme in which a defendant must surrender procedural parity with the prosecution in order to preserve his Sixth Amendment right to an impartial jury. The Court notes that "there is nothing arbitrary or irrational" about the State's rule that a defendant must use a peremptory challenge to cure an erroneous for-cause ruling, because the State has an interest in preventing needless or frivolous appeals. *Ante*, at 90. But the existence of a rational rather than a punitive reason for a burdensome requirement is of little significance under our cases. In *Brooks*, the State's interest in preventing the defendant's testimony from being influenced by the testimony of other defense witnesses was rational, but we found it insufficient to override the defendant's right to remain silent at trial. 406 U. S., at 611. And in *Jackson*, we struck down a federal statutory provision that was motivated by the legitimate in-

terest of permitting the death penalty to be imposed only upon the recommendation of a jury, because Congress had other means available to achieve that goal without burdening the exercise of constitutional rights. 390 U. S., at 582–583. In the instant case, the State's desire to prevent needless or frivolous appeals is insufficient to overcome the right to an impartial adjudicator, which "goes to the very integrity of the legal system." *Gray*, 481 U. S., at 668. Moreover, the State's concerns obviously could be addressed in numerous other ways. See, *e. g.*, Oklahoma Supreme Court Code of Professional Responsibility, DR 1–102(A)(4) ("A lawyer shall not . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation"). The burden on petitioner's Sixth Amendment rights is thus both heavy and avoidable. Our cases accordingly mandate the conclusion that the Oklahoma scheme cannot stand.

The Court's failure to apply *Gray*'s rule of *per se* reversal in this case is not justified by any of the Court's attempts to distinguish *Gray*. The only argument that might distinguish the instant case from *Gray* must condone an impermissible burden on the exercise of petitioner's Sixth Amendment right to an impartial jury. Because I am convinced that the Court's decision today cannot be squared with the Sixth Amendment either under our recent analysis in *Gray* or our other precedents, I dissent. I would reverse the judgment of the Oklahoma Court of Criminal Appeals to the extent that it left undisturbed the sentence of death.