**Maximo Lee SALAZAR, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–94–1276.**

Court of Criminal Appeals of Oklahoma.

June 5, 1996.

Rehearing Denied Aug. 7, 1996.

Mark Barrett, William Luker, Oklahoma Indigent Defense System, Capital Trial Division, Norman, for Appellant at trial.

William H. Luker, Deputy Division Chief, Capital Direct Appeals Division, Oklahoma Indigent Defense System, Norman, for Appellant on appeal.

Robert Schulte, District Attorney, Roy Calvert, Assistant District Attorney, Lawton, for the State at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## *OPINION*

STRUBHAR, Judge.

Appellant, Maximo Lee Salazar, was tried by jury and convicted of one count of Murder in the first degree (21 O.S.Supp.1982, § 701.7(A)) and one count of Burglary in the first degree (21 O.S.1981, § 1431) in the District Court of Comanche County, Case No. CRF–87–460, the Honorable Jack Brock, District Judge, presiding. The jury found three (3) aggravating circumstances [1] existed and recommended death for the murder and ten (10) years imprisonment for the burglary. The trial court sentenced Appellant accordingly.

Appellant appealed his Judgment and Sentence to this Court. In a published opinion, *Salazar v. State,* 852 P.2d 729 (Okl.Cr.1993), this Court affirmed Appellant's convictions for murder and burglary, but vacated the sentence of death and remanded the case for resentencing because the jury was not instructed on the punishment option of life without the possibility of parole.

A jury was empaneled and a new sentencing proceeding conducted before the Honorable Allen McCall on November 14–17, 1994. *See* 21 O.S.Supp.1993, § 701.10a. The jury again returned a sentence of death, but only found one aggravating circumstance existed.[2] From this Judgment and Sentence, Appellant appeals. It is with unmistakable frustration that we reverse and remand this case for a third sentencing hearing.

### I.

The facts of this case are set out in detail in *Salazar v. State,* 852 P.2d at 731–32. Stated briefly, Appellant burglarized the Prill residence in Cache, Oklahoma on August 24, 1987. The Prill's nine year old daughter, Jennifer, awoke and found Appellant in the

---

1. [1] the defendant knowingly created a great risk of death to more than one person; [2] the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and [3] the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1981, § 701.12(2), (5) and (7) respectively.

2. The defendant knowingly created a great risk of death to more than one person. 21 O.S.1981, § 701.12(2).

living room. Appellant instructed Jennifer to return to her bedroom where he followed her and fatally stabbed her twice in the neck. Appellant then fled from the Prill home with approximately six to eight dollars in cash and a set of Gary Prill's car keys. Shortly thereafter, the police arrested Appellant after he reported his car stolen and the police found the car with the Prill's car keys in it. Appellant subsequently confessed.

## II.

In his first proposition of error, Appellant argues the evidence was insufficient to prove beyond a reasonable doubt that he knowingly created a great risk of death to more than one person. 21 O.S.1981, § 701.12(2). The State responds by arguing that "the factual circumstances peculiar to the present case demonstrate that, when [Appellant] killed Jennifer, he created a risk of death to the others in the home due to the close proximity of the others to the murder, the nature of the relationships involved, and the great probability that ... the others would be awakened and come to the aid of Jennifer." Appellee's Brief at 8–9.

This Court again is faced with the arduous task of parsing through the facts of a tragic crime to determine whether a defendant should be eligible for the death penalty. We must first determine whether Appellant knowingly created a great risk of death to more than one person when he killed Jennifer Prill in her bedroom while her parents and younger sister were asleep in their bedrooms. It is undisputed that Appellant had no contact with anyone else in the house on the night of the murder. The State presented no evidence Appellant awakened or sought out any other member of the Prill family before or after he killed Jennifer. Nor was there any evidence Appellant went to the other bedrooms to investigate whether there were family members present or items of value.

■ To determine whether the State has met its burden in proving an aggravating circumstance, this Court reviews the record in the light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support the aggravating circumstance beyond a reasonable doubt. *Powell v. State,* 902 P.2d 1119, 1120 (Okl.Cr.1995); *Malone v. State,* 876 P.2d 707, 718 (Okl.Cr.1994); *Fisher v. State,* 736 P.2d 1003, 1011 (Okl.Cr.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). We have also phrased the standard of review as "whether there was any competent evidence to support the State's charge that the aggravating circumstance existed." *Perry v. State,* 893 P.2d 521, 533 (Okl.Cr.1995)(*quoting Bryson v. State,* 876 P.2d 240, 259 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995)). The *Powell* court treated both standards as the same. *Powell,* 902 P.2d at 1120.

We recently reviewed many of this Court's cases in which the great risk of death aggravator was found. *Valdez v. State,* 900 P.2d 363, 383 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995). The *Valdez* Court reiterated that "it is not the death of more than one person which supports [the aggravator], but the defendant's acts that create the risk of death to another which are in close proximity, in terms of time, location and intent to the act of killing itself." *Valdez,* 900 P.2d at 382 (*quoting Snow v. State,* 876 P.2d 291, 297 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995)). *See also Pennington v. State,* 913 P.2d 1356, 1370 (Okl.Cr.1995).

In the majority of the cases in which this aggravator has been upheld, the endangered bystanders who suffered a great risk of death were either in the line of the defendant's fire or were contemporaneously injured or killed by the defendant.[3] *Valdez,*

---

3. *See Neill v. State,* 896 P.2d 537 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996) (defendant killed three people during bank robbery); *McCracken v. State,* 887 P.2d 323 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995)(de-

fendant shot four victims during robbery); *Walker v. State,* 887 P.2d 301 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995)(defendant stabbed to death his girlfriend and her uncle); *Malone,* 876 P.2d at 717 (defendant opened fire on homicide victim while

900 P.2d at 382–83, n. 96. In the four cases where the bystanders were uninjured, the defendant threatened the bystanders and other evidence showed the defendant's intent and willingness to kill the bystanders.[4] *Id.* at 383, n. 97. In all of these cases the defendant had some contact with the bystanders.

This Court again addressed the great risk of death aggravator in *Allen v. State,* —— P.2d ——, 1996 WL 67516, 67 OBJ 713 (Okl. Cr.1996). In *Allen,* we found there must be actual risk to bystanders rather than possible risk. We noted this Court would review the evidence introduced at trial and that we would not speculate or consider "what might

two men stood nearby on porch, several people sat inside talking and children played outside); *Snow,* 876 P.2d at 297–98 (defendant killed victim in private cubicle, but attacked and stabbed victim's husband when he came there looking for her); *Long v. State,* 883 P.2d 167 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1702, 131 L.Ed.2d 564 (1995)(defendant brutally and simultaneously stabbed to death a mother and her son); *Ellis v. State,* 867 P.2d 1289 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 115 S.Ct. 178, 130 L.Ed.2d 113 (1994)(at initial crime scene, defendant shot three people, one fatally and one critically; at subsequent crime scene, defendant killed two more people and shot two more people); *Paxton v. State,* 867 P.2d 1309 (Okl.Cr. 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994)(defendant shot three people at close range in a small house, fatally injuring one and continuing to pursue the remaining two); *Trice v. State,* 853 P.2d 203 (Okl. Cr.), *cert. denied,* 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993)(defendant raped and bludgeoned to death an elderly woman, and also beat her retarded son so severely that he eventually lost an eye); *Stafford v. State,* 832 P.2d 20 (Okl.Cr.1992)(defendant shot and killed a family of three when they stopped to help him with his car); *Stout v. State,* 817 P.2d 737 (Okl.Cr.1991) (defendant killed his sister and her husband); *Sellers v. State,* 809 P.2d 676 (Okl.Cr.), *cert. denied,* 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991) (defendant killed his parents as they lay sleeping in their bed); *Fox v. State,* 779 P.2d 562 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990)(defendant murdered three grocery employees in back room of the store—see also codefendant's case *Fowler v. State,* 779 P.2d 580 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990)); *Nguyen v. State,* 769 P.2d 167 (Okl.Cr.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989), *overruled on other grounds, Green v. State,* 862 P.2d 1271 (Okl.Cr.1993) (defendant killed woman and two small children in different rooms of same house); *Stouffer v. State,* 738 P.2d 1349 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988) (defendant shot two people, one fatally, in different parts of same house); *Bowen v. State,* 715 P.2d 1093 (Okl.Cr.1984), *cert. denied,* 473 U.S. 911, 105 S.Ct. 3537, 87 L.Ed.2d 660 (1985) (defendant shot and killed three men as they left party); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985), *cert. denied,* 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985) (defendant

entered couple's home, shot woman in leg and throat and fatally shot her husband); *Stout v. State,* 693 P.2d 617 (Okl.Cr.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985) (defendant beat two people to death); *Robison v. State,* 677 P.2d 1080 (Okl.Cr.), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984) (defendant murdered three people who were in the same house); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850 (1984) (defendant fatally shot one victim during robbery, and also shot the victim's mother); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983), *vacated on other grounds, Stafford v. Oklahoma,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984) (defendant executed six restaurant workers); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983) (defendant shot and killed two people and wounded two others); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983) (defendant killed one victim, shot and critically injured two others); *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *cert. denied,* 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981), *modified by, Chaney v. Brown,* 699 P.2d 159 (Okl.Cr.1985)(defendant murdered two women).

4. *See Brecheen v. State,* 732 P.2d 889, 898 (Okl. Cr.1987), *cert. denied,* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988), *overruled on other grounds, Brown v. State,* 871 P.2d 56 (Okl.Cr.1994)(defendant created a great risk of death to more than one person when he shot at the empty bed where the victim's husband had been sleeping); *Smith v. State,* 727 P.2d 1366, 1373 (Okl.Cr.1986), *cert. denied,* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987)(defendant created great risk of death when he killed the victim and ordered acquaintances who witnessed the killing to clean up and keep quiet and there was evidence the defendant would have shot these bystanders had they not cooperated); *Ross v. State,* 717 P.2d 117, 123 (Okl.Cr.1986), *affirmed,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)(defendant created a great risk of death when he threatened to shoot a clerk if she did not cooperate with him after he killed a nearby policeman); *Hays v. State,* 617 P.2d 223 (Okl.Cr. 1980) (defendant created a great risk of death when, after killing the victim, the defendant pulled out his gun and pointed it at some teenagers, causing them to run a red light in an effort to escape).

have been had the circumstances differed slightly." *Allen*, —— P.2d at ——, 67 OBJ at 716. We concluded that a defendant could not be condemned for what might have occurred, but could be condemned only when his conduct caused a great risk to bystanders. *Id.* The record must show not a mere possibility of occurrence, but that the defendant's actions caused a serious risk to the safety of others. *Id.* at ——, 67 OBJ at 717.

In the instant case, Appellant had contact only with Jennifer Prill. Although there is always some amount of risk when one enters an inhabited family dwelling in the nighttime with a knife, the risk in the instant case was not great to the sleeping bystanders given that Appellant killed Jennifer Prill to prevent contact with other family members. The sleeping bystanders did not suffer a great risk of death as Appellant did not seek out members of the Prill family. He did not enter any other bedrooms in search of other victims. Had Appellant come into contact with another member of the Prill family and threatened them, the result would be different.

■ In light of our holdings in *Valdez* and *Allen* where we held that these defendants did not create a great risk of death to bystanders who witnessed the murders, we cannot conclude the evidence is sufficient to sustain the aggravator in the instant case. To find that all murders which occur in a family dwelling inhabited by more than one person always creates a great risk of death to more than one person is too broad an interpretation of this aggravating circumstance. In this case, Appellant did not knowingly create a great risk of death to anyone other than Jennifer Prill. *Pennington*, 913 P.2d at 1370.

We must now determine what relief is appropriate. This Court has the power to modify Appellant's sentence to life or life without parole[5] or remand[6] this matter for a third sentencing hearing. 22 O.S.1991, § 1066. We are hesitant to remand this case since errors continue to arise which require reversal and the victim's family must relive this gruesome crime at each sentencing hearing. However, we believe remanding for resentencing is the appropriate remedy since both sentencing juries concluded Appellant should receive the death penalty.

In *Poland v. Arizona*, 476 U.S. 147, 148, 106 S.Ct. 1749, 1751, 90 L.Ed.2d 123, 128 (1986), the Supreme Court addressed "whether the Double Jeopardy Clause bars a further capital sentencing proceeding when, on appeal from a sentence of death, the reviewing court finds the evidence insufficient to support the only aggravating factor on which the [sentencer] relied, but does not find the evidence insufficient to support the death penalty." The petitioners in *Poland* were convicted of a double murder arising out of a robbery of a currency courier. *Id.* at 149, 106 S.Ct. at 1752, 90 L.Ed.2d at 128. At the penalty phase, the State argued the existence of two statutory aggravating circumstances to justify imposition of the death penalty: (1) the murder was committed for pecuniary gain; and (2) the murder was especially heinous, cruel or depraved. *Id.* The trial judge, acting as sentencer, rejected the "pecuniary gain" circumstance on the theory that the circumstance required proof of a contract killing and there was no proof of such in the record. *Id.* The trial judge did find, however, that the State had proved that the murders were "especially heinous, cruel or depraved," and that this circumstance outweighed any mitigating evidence. *Id.* The trial judge sentenced the petitioners to death. *Id.*

On appeal, the Arizona Supreme Court reversed the convictions due to trial error. *Id.* at 150, 106 S.Ct. at 1752, 90 L.Ed.2d at 129. With respect to the penalty phase, the

---

**5.** *See Cheney v. State*, 909 P.2d 74, 83 (Okl.Cr.1995)(finding insufficient evidence to support the aggravating circumstance found and modifying to life imprisonment without parole); *Perry*, 893 P.2d at 537 (finding insufficient evidence to support the two aggravating circumstances found and modifying to life imprisonment without parole).

**6.** *See Crawford v. State*, 840 P.2d 627, 641 (Okl. Cr.1992) (finding insufficient evidence to support the sole aggravating circumstance found and remanding for resentencing for the trial court to give proper consideration to the possible alternative punishments of life imprisonment or life imprisonment without parole).

appellate court found insufficient evidence to support the aggravating circumstance "especially heinous, cruel or depraved." *Id.* The appellate court also held that the pecuniary gain circumstance was not limited to contract killings and therefore the circumstance could be considered at resentencing. *Id.*

The petitioners were reconvicted and again sentenced to death. *Id.* The trial judge found both the especially heinous, cruel or depraved circumstance and the pecuniary gain circumstance.[7] *Id.* The petitioners appealed to the Arizona Supreme Court arguing, *inter alia*, that the Double Jeopardy Clause barred reimposition of the death penalty because the appellate court had found the evidence insufficient to support the "heinous, cruel or depraved" circumstance which they claimed constituted an acquittal of the death penalty. *Id.* at 151, 106 S.Ct. at 1753, 90 L.Ed.2d at 129. The Arizona Supreme Court rejected the double jeopardy claim and affirmed the death sentence on the finding of the "pecuniary gain" circumstance. *Id.* However, the court again found the evidence was insufficient to support the "especially heinous, cruel or depraved" circumstance. *Id.* The United States Supreme Court granted certiorari. *Id.*

The Supreme Court held that the Double Jeopardy Clause did not bar the reimposition of the death penalty because neither the sentencing court nor the Arizona Supreme Court had held that there was no basis for the death sentence. The *Poland* court stated:

> We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes. Bullington indicates that the proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" *that the death penalty is appropriate.* We are not prepared to extend Bullington further and view the capital sentencing hearing as a

set of mini-trials on the existence of each aggravating circumstance.

. . . .

> Aggravating circumstances are not separate penalties or offenses, but are "standards to guide the making of [the] choice" between the alternative verdicts of death and life imprisonment. (citation omitted) Thus, under Arizona's capital sentencing scheme, the judge's finding of any particular aggravating circumstance does not of itself "convict" a defendant (i.e., require the death penalty), and the failure to find any particular aggravating circumstance does not "acquit" a defendant (i.e., preclude the death penalty).

. . . .

> It is true that the sentencer must find *some* aggravating circumstance before the death penalty may be imposed, and that the sentencer's finding, albeit erroneous, that no aggravating circumstance is present is an "acquittal" barring a second death sentence proceeding. (citation omitted)

. . . .

> This concern with protecting the finality of acquittals is not implicated when, as in these cases, a defendant is sentenced to death, i.e., "convicted." There is no cause to shield such a defendant from further litigation; further litigation is the only hope he has. The defendant may argue on appeal that the evidence presented at his sentencing hearing was as a matter of law insufficient to support the aggravating circumstances on which his death sentence was based, but the Double Jeopardy Clause does not require the reviewing court, if it sustains that claim, to ignore evidence in the record supporting another aggravating circumstance which the sentencer has erroneously rejected. Such a rule would have the odd and unacceptable result of requiring a reviewing court to enter a death penalty "acquittal" even though that court is of the view that the State has "proved its case."

*Poland,* 476 U.S. at 155–57, 106 S.Ct. at 1755–56, 90 L.Ed.2d at 132–33.

**7.** The prosecution also alleged that petitioner Patrick Poland had previously been convicted of

"a felony ... involving the use or threat of violence on another person."

We interpret *Poland* to hold that if either the trial court or a reviewing court finds that, after removal of any infirm factors, the residual evidence offered by the state at the sentencing proceeding will not support a death sentence, then the defendant has been acquitted of the death penalty and jeopardy precludes any further sentencing proceedings seeking a death verdict. However, if there is evidence which supports other statutory aggravating circumstances, the case may be remanded and a death verdict may be sought. Put simply, when there is evidence of aggravating circumstances in the record and error requires reversal, the slate is wiped clean [8] and a defendant may be subjected to any punishment authorized by law including death. *Poland*, 476 U.S. at 157, 106 S.Ct. at 1756, 90 L.Ed.2d at 133.

In the instant case, there was evidence that Appellant murdered Jennifer Prill to avoid prosecution. There was also evidence introduced to show that Appellant constituted a *continuing* threat to society. Although the jury did not find these two aggravating circumstances, the jury did find that Appellant should receive the death penalty. Because two sentencing juries returned verdicts of death against Appellant and we find evidence in the record to support the finding of statutory aggravating circumstances, we remand this case for a third sentencing hearing so an appropriate sentencer may weigh the evidence of aggravating circumstances with any evidence of mitigating circumstances and render an appropriate sentence in this case.

### III.

In his second proposition of error, Appellant argues he was denied a fair trial when the trial court refused to excuse prospective jurors Blubaugh, Webb, Ayers and Lucas for cause. Appellant claims the trial court abused its discretion because these prospective jurors said they could not consider all punishment options. Appellant claims prejudice resulted because he was forced to remove these prospective jurors with peremptory challenges [9] and retain other jurors he would have otherwise removed.

The decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion whose decision will not be disturbed unless an abuse of discretion is shown. *Spears v. State*, 900 P.2d 431, 437 (Okl.Cr.), *cert. denied*, —— U.S. ——, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995); *Allen v. State*, 862 P.2d 487, 491 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1657, 128 L.Ed.2d 375 (1994); *Simpson v. State*, 827 P.2d 171, 175 (Okl.Cr.1992). To determine if the trial court properly ruled on a challenge for cause, this Court will review the entirety of the juror's voir dire examination. *Carter v. State*, 879 P.2d 1234, 1244 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995). To withstand a challenge for cause concerning punishment issues, a venireperson need only be willing to consider all the penalties provided by law and not be irrevocably committed to any one punishment option before the trial has begun. *Carter*, 879 P.2d at 1244.

In the instant case, prospective juror Blubaugh said she felt the appropriate punishment for premeditated murder was death. When asked if she would vote for the death penalty in all premeditated murders, she said she would need to know the evidence first. Defense counsel then said:

> Counsel: In this case, we've got that much established, guilty of premeditated murder.
>
> Blubaugh: Well, if somebody plans to kill somebody and they kill them, looks like it would be death.
>
> Counsel: You're saying the verdict ought to be death and that would be the only

---

**8.** The "clean slate" rule provides there is no double jeopardy bar to retrying a defendant who has succeeded in overturning his conviction due to trial error since the original conviction has been nullified and the "slate wiped clean." *Bullington v. Missouri*, 451 U.S. 430, 442, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270, 281 (1981)(*quoting North Carolina v. Pearce*, 395 U.S. 711, 721, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656, 667 (1969)), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

**9.** Blubaugh (Tr. 109); Webb (Tr. 164); Ayers (Tr. 137); and Lucas (Tr. 261).

appropriate verdict as far as you're concerned?

Blubaugh: I think that's it.

(Tr. 62)

Defense counsel then questioned the other prospective jurors before challenging Blubaugh for cause. Initially, Blubaugh, although somewhat favoring death for premeditated murder, said she would need to hear the evidence before rendering any punishment verdict. Later, her responses indicated she thought death was the only appropriate punishment in this case. Blubaugh's last response shows that she would not consider the other punishment options and was committed to death. No rehabilitation occurred. A review of Blubaugh's entire voir dire examination shows that she was unwilling to consider the three punishment options.

Prospective juror Webb stated that he did not think there were any cases of intentional murder where a sentence of life with the possibility of parole would be appropriate. Juror Webb did state that he would consider mitigating evidence if instructed to do so. Webb's responses show that he was unwilling to consider a sentence of life although his other responses indicate he would consider life without parole and death. No rehabilitation occurred.

Prospective juror Ayers said he would consider all punishment options, try to be fair and follow the instructions. However, Ayers noted he had preconceived notions concerning Appellant's guilt. Ayers also stated he could not vote for a sentence of life with the possibility of parole for an intentional murder. After his challenge for cause was denied, counsel asked:

> Counsel: To make sure we understand what you're talking about, you have a definite belief that you could not vote for life with the possibility of parole, is that correct?
>
> Ayers: Yes.

> Counsel: And the other one is you have (sic) definite belief that there would be no possibility that mitigation evidence could overcome the fact that a nine year old girl was killed?
>
> Ayers: Right.

(Tr. 122)

These last responses show Ayers could not consider all the punishment options nor could he fulfill his duties as an impartial juror. No rehabilitation occurred.

Prospective juror Lucas stated she could consider the three punishment options and follow the court's instructions. Lucas admitted she would find it difficult to consider a sentence of life with the possibility of parole. In the end Lucas said she would do her best to look at the punishment options "openmindedly and make a decision."[10] A review of the entirety of Lucas' voir dire examination shows she could consider the three punishment options and was not irrevocably committed to any sentence.

We find Appellant's argument compelling. Appellant raised three valid challenges for cause which were overruled by the trial court and neither the State nor the trial court asked any questions to clarify Blubaugh's, Webb's or Ayer's ability to consider all three punishment options. Appellant was forced to remove each of the three prospective jurors with a peremptory challenge. After utilizing all nine of his peremptory challenges, Appellant objected, moved to quash the jury panel or in the alternative asked for additional peremptory challenges.[11] Appellant further preserved the error by stating he would remove jurors Allen and Holloway for legitimate reasons.[12] The error was clearly preserved and we are unpersuaded by the State's response during oral argument that Appellant created this error and failed to elicit responses demonstrating these jurors' ability to consider all punishment options. The State cannot sit idly by and expect this Court to speculate that had the

---

**10.** Tr. 261.

**11.** Tr. 294–95.

**12.** Counsel said he would remove Allen because her brother was murdered six months earlier and

Holloway because he had taken criminal justice classes in order to pursue a law enforcement career and counsel feared Holloway would align himself with the prosecution.

jurors been asked additional or different questions, the record would show the jurors could consider all three punishment options.

What this record does show is that three jurors could not consider all three punishment options and Appellant was forced to remove them with peremptory challenges. Because Appellant properly preserved the record by stating that he would have removed jurors Allen and Holloway for legitimate reasons had he not been forced to remove Blubaugh, Webb and Ayers, he has sufficiently proved prejudice and is entitled to relief. *Cannon v. State*, 904 P.2d 89, 98 n. 24 (Okl.Cr.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996).

## IV.

In his fifth proposition of error, Appellant claims the trial court committed reversible error when it refused to allow Fran St. Peter, a social worker, to testify as a defense expert witness. At trial the State objected to St. Peter, claiming she was not a recognized professional in any area. The trial court found that St. Peter was not an expert stating, "[s]he's not an expert … under any stretch of the imagination. She's a social worker, she has no professional degree…." The trial court also found that St. Peter did not have the qualifications as an expert to testify about Appellant's family structure and his role in it. Defense counsel called St. Peter and made an offer of proof concerning her qualifications [13] and opinions.[14]

Title 12 O.S.1991, § 2702 provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise.

■ This Court has defined an "expert witness" as one who is possessed of scientific knowledge acquired by study or practice, or both. *Kennedy v. State*, 640 P.2d 971, 977 (Okl.Cr.1982). Experts are ordinarily persons who have experience and knowledge in relation to matters which are not generally known. *Id.* Social workers certainly may qualify as expert witnesses.[15] Formal degrees have never been and are not required to qualify a witness as an expert. 12 O.S. 1991, § 2702.

■ St. Peter testified she had specialized knowledge which she acquired through formal education. She further testified that she had developed skills through training and working in the field. She described how she arrived at her opinions and that the method she used was consistent with others in her field. St. Peter was qualified to render relevant expert opinions within her field of expertise and the trial court erred in excluding her testimony. Finding various errors which require relief, the sentence of death is **VACATED** and the cause **REMANDED** for a new sentencing proceeding.

CHAPEL, V.P.J., and LANE, J., concur.

JOHNSON, P.J., specially concurs.

LUMPKIN, J., concurs in result.

JOHNSON, P.J., concurring specially.

I truly believe in the jury system. There is not a better justice system anywhere in the world than when twelve of your peers make a decision as to a person's fate. *Twice*

---

**13.** St. Peter testified she had been a licensed social worker for ten (10) years. She held a Bachelor's degree in nursing and psychology and a Master's degree in social work. St. Peter had worked in the State hospital system in Texas and private practice in geriatric psychiatry and chemical dependency.

**14.** St. Peter opined that Appellant was the "scapegoat" in his family and that he suffered from abandonment. (Tr.III at 195–96)

**15.** We note that in *Castro v. Reynolds*, 71 F.3d 1502, 1510 (10th Cir.1995), the court recognized

that St. Peter was an expert who conducted social history investigations of capital murder defendants to explain the defendant's developmental history and the links between that history and the defendant's conduct at the time of the offense. The fact that one court has recognized a witness as an expert on that occasion *does not* require another court to declare the witness as an expert at a subsequent trial. However, it is a factor to be considered in determining if the party offering the witness has met the foundational requirements of having the witness declared an expert.

a jury of twelve have found Appellant should face the death penalty. I agree with the jury verdict as to death in both cases.

An appellate judge is sworn to uphold the law. Therefore, I must, under the law, concur in the finely written opinion of Judge Strubhar. I do so with great reluctance. The law gives no choice to this Court except to do what we have done and for me to specially concur herein.

Had this jury found that the murder was committed for the purpose of avoiding a lawful arrest or that the defendant would be a continuing threat to society, I would certainly affirm Appellant's death sentence. However, the jury's decision as to creating a great risk of death to more than one person just cannot be upheld legally.