## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1998-KA-00982-SCT

*AARON CARTER*

*v.*

*STATE OF MISSISSIPPI*

### CONSOLIDATED WITH

### NO. 2000-KA-00758-SCT

*GEORGE PIERCE a/k/a 'CADILLAC'*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/1998 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENT E. SMITH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/11/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/1/2001 |

**BEFORE BANKS, P.J., MILLS AND EASLEY, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. George Pierce a/k/a 'Cadillac' ("Pierce") was convicted of capital murder for the killing of James Ryals ("Ryals") while engaged in the commission of robbery following a jury trial conducted on February 17-20, 1998, in the Circuit Court of Coahoma County. Pierce had been jointly indicted with Aaron Carter a/k/a 'Little Head' ("Carter"). Pierce was previously tried twice, September 1997 and December 1997, seeking the death penalty. Both trials resulted in a mistrial based on the failure of the jurors to unanimously reach a verdict. The State chose not to pursue the death penalty against Pierce, and the trial court allowed the cases against Pierce and Carter to be consolidated. Both Pierce and Carter were found guilty of capital murder and sentenced to a term of life imprisonment without the possibility of parole.[1] Pierce's motion for

judgment notwithstanding the verdict, or in the alternative, for a new trial was denied by the trial court. Pierce filed a request for an out-of-time appeal which was allowed by the trial court on March 24, 2000, and filed on April 6, 2000. Pierce filed his notice of appeal to this Court on April 17, 2000, with the Coahoma County Circuit Clerk, appealing his February 23, 1998, conviction of capital murder and sentence of life imprisonment without the possibility of parole.

## FACTS

¶2. On October 28, 1996, Ryals was employed at Toney's Package Store located at 1003 Martin Luther King Drive in Clarksdale, Mississippi, across from the Hong Kong Market. As Ryals closed the liquor store and locked the doors from outside around 8:30-9:30 that evening, he was approached by two males. Ryals was carrying the store's money bag. Ryals was also in possession of a .38 pistol which was taken from him. Ryals was pulled to the west side of the building where he was shot six times with his own .38 pistol.

¶3. Officer Christopher Salley ("Officer Salley") of the Clarksdale Police Department responded to the call on October 28, 1996. When he arrived on the scene, Ryals was covered with blood and in bad shape, but Ryals was still alive. Ryals told him that he had been jumped by two young guys while coming out of the store, and they took his wallet and tried to take his money. They had used Ryals's own gun to shoot him. Ryals was transported from the scene by ambulance and later died.

¶4. Dr. Steven Hayne ("Hayne"), state pathologist, performed the autopsy on October 29, 1996. At the time of his death, Ryals was a 69 year old Caucasian male. Dr. Hayne testified that Ryals's injuries included a total of six gunshot wounds, as well as, multiple scrapes of the skin called abrasions and bruises. There were abrasions over the back of the head and on the back. There were scraps on the right forearm, right knee, left knee, back left forearm and front left forearm. There were bruises on the left forearm and left and right eyes. The gunshot wounds were to various areas of the body: right thigh on the front surface, left thigh on the front surface, back left shoulder, back left arm, chest wall from left to right, back left shoulder, left back, and left flank. Dr. Hayne testified that three of the gunshots were lethal. Ryals died from the three gunshot wounds to the following areas of the body: left shoulder, left back, and left chest. Dr. Hayne further testified that the manner of death was homicide.

¶5. Tyrone Collins ("Collins") testified as an eyewitness for the State. Collins had purchased a pint of alcohol at the liquor store and had smoked crack cocaine that day. He had walked to a house near the liquor store to drink with eight or nine of his friends. Collins stood up when he heard shots fired. He testified that the shots were coming from Toney's Liquor Store (Toney's Package Store). Collins saw Pierce standing over a man shooting him.

¶6. At trial, Collins identified Pierce. Collins testified that he had known Pierce for about a year before the incident in question. Collins and Pierce used to hang out together. Collins testified that he had an unobstructed view of that side of the liquor store which was illuminated by a bright street light.[2] Collins testified that at the time of the shooting, Pierce was wearing a white t-shirt, black pants and a black baseball cap.

¶7. Pierce's former girlfriend and mother of his child, Latasha Veal ("Veal"), testified at trial on behalf of the State. Veal had seen Pierce on October 28, 1996, between 8:00 and 9:00 that evening. Pierce was pacing around back and forth acting unusual and nervous. Pierce and Veal left that night and traveled to Memphis,

Tennessee, in a truck belonging to Pierce's mother. They were heading to Pierce's brother's house in Memphis. Veal testified that when she asked Pierce what was wrong he replied that, "He didn't know what to do about something. He had killed a man." Veal testified that the reason Pierce gave for killing the man at the liquor store in front of Hong Kong Market was that the man had seen him. Veal testified that Pierce was wearing a white t-shirt, some dark pants and a cap on the evening of October 28, 1996. Veal identified the State's clothing exhibit as the clothing Pierce had been wearing.

¶8. Pierce turned himself in at the police station in Clarksdale, Mississippi, the next day in connection with the murder of Ryals.

¶9. On appeal, Pierce raises the following issues:

**I. WHETHER THE TRIAL COURT ERRED BY NOT ALLOWING THE SEVERANCE OF PIERCE'S TRIAL FROM CO-DEFENDANT CARTER?**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING PIERCE'S OBJECTIONS AND MOTIONS DURING THE JURY SELECTION PROCESS BASED UPON EXCLUSION OF BLACK JURORS WITH THE USE OF PEREMPTORY CHALLENGES?**

**III. WHETHER THE TRIAL COURT ERRED IN DENYING PIERCE'S REQUEST FOR JURY INSTRUCTIONS THAT WOULD INCLUDE A LESSER OFFENSE OF MURDER AND MANSLAUGHTER?**

**IV. WHETHER THE JURY'S VERDICT OF CAPITAL MURDER WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

### LEGAL ANALYSIS

**I. WHETHER THE TRIAL COURT ERRED BY NOT ALLOWING THE SEVERANCE OF PIERCE'S TRIAL FROM CO-DEFENDANT CARTER?**

¶10. Pierce alleges that the trial court erred in consolidating his trial with co-defendant, Carter, thereby denying his request for severance. Pierce cites the witness testimony of Savannah Watson ("Watson") as establishing the grounds for a severance. Watson testified at trial that on October 28, 1996, she positively saw Carter involved in a fight with a "white dude." The fight began in front of the liquor store and ended on the side of the store. Carter was not alone, but she could not state positively that Pierce was the other man. When Watson heard the shots fired, she ran and left for Memphis. After denying her ability to identify Pierce, Watson was questioned by the State regarding her prior statement to Fernando Harris on February 10, 1997, at the police station.

¶11. The pertinent excerpts of Watson's testimony at trial are as follows:

State: On page two of that statement, do you recall that Mr. Harris was asking you what you saw and did you say (as read): And I heard a shot, and I went to the other side of the street. And then Little Head (Carter) and George (Pierce) came out of the liquor store and a white man came out behind them. And Little Head and the white man was fighting on the side of the building. I heard two more shots and them (sic) boys took off running. Little Head bent over and picked something up, and he

took off to running (sic).

Watson: No.

State: You remember saying that?

Watson: Because how am I going to see them coming out of the store and then run across the street, then run back across the street? How is that possible when I've got my niece with me?

State: Well, I'm not going to argue with you, but I'm simply asking you what you might have said at that time?

Watson: True.

State: And down here Mr. Harris was still asking you and you said (as read): George (Pierce) came out of the store. Little Head (Carter) came out behind him. The white man came out. And if I'm not mistaken, I think that white man had a pistol. Do you remember saying that?

Watson: Yes.

State: Okay. And Mr. Harris said (as read): Okay. And then you said (as read): And Little Head (Carter) and white man was fighting. I heard some more shots. The white man fell. George (Pierce) took off. Little Head (Carter) bent over and picked up something, and he took off. Do you remember saying that?

Watson: No, I do not.

State: Yeah. (As read): Where was George (Pierce) when Little Head (Carter) was fighting that man? You answered (as read): He was there. And he said (as read): He was standing there? You said (as read): Uh-huh.

Watson: I never did identify a second person.

State: You what?

Watson: I never did identify the second person because I did not see his face.

¶12. At trial, Watson maintained her position that she never identified Pierce as being the second man with Carter.

¶13. In *Stevens v. State*, 717 So.2d 311, 312 (Miss. 1998), this Court stated that the decision whether to grant a severance depends on whether the severance is necessary to promote a fair determination of the defendant's guilt or innocence. *See Tillman v. State*, 606 So.2d 1103, 1106 (Miss. 1992) (overruled on other grounds). Defendants jointly indicted for a felony are not entitled to separate trials as a matter of right. *Price v. State*, 336 So.2d 1311, 1312 (Miss. 1976).

¶14. Severance in felony cases is governed by Miss. Code Ann. § 99-15-47 (2000) which states as follows:

Any of several persons jointly indicted for a felony may be tried separately on making application

therefor, in capital cases, before the drawing of any special venire which is summoned to appear on the day the case is set for trial and in other cases, before arraignment.

¶15. URCCC 9.03 provides:

The granting or refusing of severance of defendants in cases not involving the death penalty shall be in the discretion of the trial judge.

The court may, on motion of the state or defendant, grant a severance of offenses whenever:

1. If before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

2. If during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offence.

¶16. In the case sub judice, the death penalty was not an option on sentencing. Therefore, even though this was tried as a capital murder, the decision whether to sever the trials remained within the trial court's discretion. *See Rooks v. State*, 529 So.2d 546, 556 (Miss. 1988); *Rigby v. State*, 485 So.2d 1060, 1061 (Miss. 1986); *Price*, 336 So.2d at 1311.

¶17. In *Rigby*, this Court held that it is prejudicial error to overrule a timely motion for severance where one co-defendant's testimony will be adverse to the other. 485 So.2d at 1061. Here, both Pierce and Carter maintained that neither of them had anything to do with the robbery and murder of Ryals. Both Pierce and Carter testified in their own defense claiming an alibi defense. Neither Pierce nor Carter pointed the finger of guilt at the other. In *Duckworth v. State*, 477 So.2d 935, 937 (Miss. 1985), this Court stated that, "where the testimony of one defendant did not tend to exculpate himself at the expense of another and there does not appear to be a conflict of interest among the co-defendants, severance is not required." It is not error to deny severance of a trial where all the evidence goes to the guilt of both defendants. *Blanks v. State*, 451 So.2d 775, 777 (Miss. 1984).

¶18. The trial transcript reflects that the trial court denied Pierce's request not to consolidate the trial. The pertinent part of the record reflects as follows:

By Mr. Walls (Defense): Your Honor, after conferring with my client, my client wants me to make a motion or object to the consolidation of the trial and his being tried with Mr. Carter on the basis that they may have antagonistic feelings toward one another.By the Court: I've already granted the State's Motion to Consolidate. In fact, I never did officially grant the severance in the first place. But, anyhow, since this is -- based upon my knowledge of the case, having already been tried twice, resulting in this trial, the Court fails to see anything antagonistic about the defense of these two defendants. I understand that both are claiming an alibi defense. Nothing antagonistic in that. In fact, the defense -- alibi defense of one, is, as you so amply argued the first time, is -- also can be argued as a defense for the other defendant. Anyhow the motion is denied.

¶19. We find that the trial court did not abuse its discretion in denying a severance. The evidence introduced at trial went to the guilt of both defendants as noted by the trial court. Neither defendants attempted to exculpate himself at the expense of the other. The trial court denied the request on the record. Nothing indicates an abuse of discretion by the trial court. This issue is without merit.

**II. WHETHER THE TRIAL COURT ERRED IN DENYING PIERCE'S OBJECTIONS AND MOTIONS DURING THE JURY SELECTION PROCESS BASED UPON EXCLUSION OF BLACK JURORS WITH THE USE OF PEREMPTORY CHALLENGES?**

¶20. In the case sub judice, the State exercised six peremptory challenges all against potential jurors of the African-American race. The six potential jurors that were struck are Jenkins (3), Smith (7), Beacham (8), Davis (9), Banks and Skipper. Pierce does not raise an objection on appeal as to jurors Banks or Skipper nor did Pierce's counsel at trial raise an objection to the exclusion of Banks and Skipper. The State did accept African-American jurors, Miller and Foster. Pierce contends that the trial court erred in finding that the State could exercise its peremptory challenges on jurors Jenkins, Smith, Beacham and Davis.

¶21. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a peremptory challenge cannot be used to exclude venire-persons from jury service based on their race. A peremptory challenge based on race constitutes a violation of equal protection. *Id.*, 476 U.S. at 98, 106 S.Ct. at 1723-24. Since the *Batson* ruling in 1986, the United States Supreme Court and this Court have extended the use of the rule to other circumstances. *See J. E. B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 129, 114 S.Ct. 1419, 1422, 128 L.Ed.2d 89 (1994)(*Batson* extended peremptory challenges based on gender); *Georgia v. McCollum*, 505 U.S. 42, 54, 112 S.Ct. 2348, 2356, 120 L.Ed.2d 33 (1992)(defendant's use of peremptory challenges based on racial consideration was prohibited); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628-29, 111 S.Ct. 2077, 2087, 114 L.Ed.2d 660 (1991)(*Batson* extended to civil cases); *Powers v. Ohio*, 499 U.S. 400, 415-16, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991) (race-based challenges by the State without regard to the race of the defendant was prohibited); *Thorson v. State*, 721 So.2d 590, 594 (Miss. 1998) (*Batson* extended to peremptory strikes based on religion).

¶22. The necessary steps to resolve a peremptory challenge based upon *Batson* are cited in *Stewart v. State*, 662 So.2d 552, 557-58 (Miss. 1995) as follows:

> 1. The party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory challenge.

> 2. If this initial showing is successful, the party desiring to exercise the challenge has the burden to offer a race-neutral explanation for striking the potential juror.

> 3. The trial court must then determine whether the objecting party has met their burden to prove there has been purposeful discrimination in the exercise of peremptory challenges.

¶23. The United States Supreme Court in *McCollum*, extended *Batson* and held that "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges." 505 U.S. at 59, 112 S.Ct. at 2348. Ordinarily, the first step in analyzing the peremptory challenge is to determine "whether there was a prima facie showing that race was the motivation for the State's peremptory challenges." *Woodward v. State*, 726 So.2d 524, 530 (Miss. 1997).

¶24. The United States Supreme Court held that peremptory challenges are not of constitutional dimensions

and that the challenges are a means to achieve the end of an impartial jury. ***Ross v. Oklahoma***, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80, 90 (1988).

¶25. This Court in ***Stewart***, 662 So.2d at 557, stated that:

> The right to peremptory challenges is not mandated by the federal constitution, but is instead a state created right. ***Ross v. Oklahoma***, 487 U.S. 81, 89, 108 S.Ct. 2273, 2279, 101 L.Ed.2d 80 (1988). A state may place restrictions on the use of peremptory challenges because it is a state created right. ***Id***.; *See also **Mettetal v. State***, 615 So.2d 600, 603 (Miss. 1993) (requiring defendant to use peremptory challenges to cure erroneous denials of challenges for cause). However, the arbitrary denial of a state right rises to a violation of the due process clause of the Fourteenth Amendment. ***Hicks v. Oklahoma***, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). Mississippi law entitles a capital case defendant to twelve peremptory challenges. Miss. Code Ann. § 99-17-3 (1972); Unif. Crim. R. Cir. Ct. Pr. 5.06. Thus, the arbitrary denial of one of these twelve peremptory challenges afforded in a capital case is a violation of due process.

¶26. In ***Woodward***, this Court stated the "next step is to determine whether the prosecution met its burden of showing sufficient race-neutral explanations for its strikes." 725 So.2d at 529-30. "A peremptory challenge does not have to be supported by the same degree of justification required for a challenge for cause." ***Stewart*** 662 So.2d at 558. It is not necessary to meet the same standard of examination as a challenge for cause for a peremptory challenges. ***Id***.

¶27. This Court has held that the trial judge is afforded great deference in determining if the expressed reasons for exclusion of a venire-person from the challenged party is in face race-neutral. ***Tanner v. State***, 764 So.2d 385, 393 (Miss. 2000). In ***Stewart***, this Court held that "one of the reasons the trial court is granted such deference in a ***Batson*** issue is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality." 662 So.2d at 559. Furthermore, the determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. ***Hernandez v. New York***, 500 U.S. 352, 365, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). In ***Stewart***, this Court also, held that "[d]espite the importance of demeanor evidence, the trial court must consider all the relevant circumstances, such as the way prior peremptory strikes have been used and the nature of the questions poised on voir dire." 662 So.2d at 559 (citing ***Griffin v. State***, 607 So.2d 1197, 1202 (Miss. 1992)). A reversal will only occur if the factual findings of the trial judge appear to be "clearly erroneous or against the overwhelming weight of the evidence." ***Tanner***, 764 So.2d at 393 (citing ***Stewart***, 662 So.2d at 558; ***Davis v. State***, 551 So.2d 165, 171 (Miss. 1989)).

¶28. The trial court had the opportunity to witness the challenges and observed the demeanor of all involved and all other relevant circumstances in the case. The trial court's findings are not clearly erroneous or against the overwhelming weight of the evidence. Therefore, we find that this contention is without merit.

¶29. In the case sub judice, the trial court made a prima facie determination and required the State to set forth race neutral reasons since all six peremptory challenges were against members of the black race. On appeal, Pierce addresses only four jurors: Jenkins, Smith, Beacham and Davis. The trial court accepted the race neutral reason set forth by the State. The record reflects in pertinent part as follows:

> By the Court: The State exercised six peremptory challenges. All six of which were against members

of the black race. I will find the prima facie case and will require the State to give race neutral reasons. Start with juror number 3, your S-1.

By the State: Your Honor, 3 -- actually 3, 7, 8, and 9 were, by us, considered together.

By the Court: I think I know why, but go ahead.

By the State: Yes, sir. The reason being, Your Honor, that during the very fine voir dire of Mr. Walls he succeeded in effecting these or affecting these four similarly. He got to talking about, during voir dire, people who were witnesses and they are not telling the truth simply because they take the stand, and these ladies started nodding and started being very vocal, outwardly vocal, speaking out and saying yes. I believe in the police -- the extensive questioning concerning police and not believing them simply because they were wearing a uniform were they telling the truth. They, again, were very vocal in that regard. For instance, Ms. Jenkins and the other three incidentally, too, but I recall her being so obviously upset when Mr. Walls began saying people judge blacks who are sitting on the corners and so forth. She sat up in her seat. There were questions concerning don't believe a lot of black men get into crime and how many of you believe that? Let me see, you read that black men get into various crimes, how many of you believe that? And she said, no, I don't believe that. I mean, it was outward and very -- they were very vocal in answering that, not only through their gestures; that is, nodding and sitting up in their seats but being vocal, as they were doing there too.

What I considered to be obvious, was that because of the police officer questioning there, they have, in fact, a distrust for police officers. When I say "they," I'm talking about all four. If you don't mind, since my argument is dealing with all four of them. So that is why we -- I thought it was so loud that everybody in the courtroom -

By the Court: Since you mentioned it, while ya'll were out in the recess to consider your -- who you were going to challenge peremptory, the three of us -- the deputy clerk and my court reporter -- commented on these four because of the fact that they were so vocal. We all make the comment, at least I made, I think we all agreed, that if Senator Walls ever became a preacher, he could surely use these four in his congregation because of their Amen responses to his questions. They were very vocal, these four. In fact, I don't know any other jurors in the courtroom who were as vocal as they were nor did these four respond to anyone except Senator Walls.

I don't know if y'all want to say anything on that or not, but that was the Court's observation on it anyway.

(THESE ARE THE UNIDENTIFIED JURORS REFERRED TO IN MR. WALLS' VOIR DIRE.)

By the Defense: Your Honor, my response is: I can't say these particular four did not respond, but so did jurors number 2, Brocato; Bankston; Littrell. They were the ones who reacted to my questioning about police officers, as well as believing people.

By the Court: With a polite nod but not as vocal as these four. These four were very noticeable.

By the State: I did see some nodding, but I never did hear any of the others, and I don't know who did what.

By the Court: I'll support you on the vocal part. Of course, you got the nods throughout the entire audience, whites and blacks, very appropriate. But these four were very vocal, and I did observe that.

By the Defense: Your Honor, just for the record, it was my hearing, which is impaired granted, as a matter of fact, I had to ask one of the jurors to speak up because I couldn't hear him, but from my observation and hearing, those four were about the same posture as was juror number 10, Deborah Rybolt and Danith Brocato.

By the Court: I did not note that.

By the State: If I may, Your Honor, since all the lawyers seem to be addressing this issue, I didn't even -- it was about Mr. Walls' second or third question by the time I started hearing something very loud over there in responses. And I turned around and made it a point to try to observe where that was coming from and each time that there was a really loud response, it was number 3, number 7, number 8 and number 9 who were making it. I virtually, simultaneously -

By the Court: I recognized the same thing. That was something that the Court itself noticed. I will accept all four of those as race neutral.

¶30. We find that the trial court did not err in allowing the State to exercise its peremptory challenge as to jurors Jenkins, Smith Beacham and Davis. The State set forth a valid race neutral reason for striking the jurors. This issue is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING PIERCE'S REQUEST FOR JURY INSTRUCTIONS THAT WOULD INCLUDE A LESSER OFFENSE OF MURDER AND MANSLAUGHTER?

¶31. Pierce argues that a lesser-included offense instruction should have been granted. Pierce alleges that when the trial court denied him a lesser-included offense instruction, he was found guilty of robbery before the case was submitted to the jury. Pierce further claims that the only instruction given to the jury forced a conviction of capital murder.

¶32. However, Pierce's argument is contradicted by the trial record. The trial court allowed a capital murder jury instruction, a lesser-included offense instruction of murder and a not guilty instruction as to murder. The following jury instructions were given by the trial court:

Jury Instruction # 9104(A)

The Court instructs the jury that one of the elements of the charge of capital murder of James Ryals is the crime of robbery. Therefore, the State must prove the crime of robbery of James Ryals.

If you find from the evidence in this case beyond a reasonable doubt that:

(1) on or about October 28, 1996, a .38 caliber pistol and a wallet and its contents, were the property of James Ryals, and

(2) the defendants, GEORGE PIERCE and AARON CARTER, while acting in concert with and aiding and abetting each other, did unlawfully, willfully and feloniously take the said items, in the

presence or from his person and against his will, and

(3) by violence to said James Ryals or by putting him in fear of some immediate injury to his person,

then the defendants, GEORGE PIERCE and AARON CARTER, were engaged in the crimes of robbery, and it is your sworn duty to so find.

If the evidence fails to convince you beyond a reasonable doubt any one or more of the above elements of robbery, then the defendants were not engaged in the crime of robbery.

Jury Instruction #9104 (B)

The Court instructs the jury that in the event the evidence fails to convince you beyond a reasonable doubt that the defendants, GEORGE PIERCE and AARON CARTER, while acting in concert with and aiding and abetting each other, were not engaged in the crime of robbery, but the State has proved beyond a reasonable doubt the other elements of capital murder as set out in these instructions, then you shall find the defendants guilty of murder of James Ryals.

The Court instructs the jury that the elements of murder in this case are:

(1) that James Ryals, on October 28, 1996, was a living person, and

(2) that GEORGE PIERCE and AARON CARTER, while acting in concert with and aiding and abetting each other, did willfully, feloniously, without authority of law, and of their deliberate design to effect death, kill and murder James Ryals.

If the State has failed to prove any one or more of the above elements, then you shall find the defendants not guilty of murder.

Jury Instruction #9104 (C)

The Court instructs the jury that if warranted by the evidence, you may find the defendants guilty of a crime lesser than capital murder. However, not withstanding this right, it is your duty to accept the law as given to you by the Court, and if the facts and law warrant a conviction for the crime of capital murder, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge of capital murder, but does justify a verdict of a lesser crime of murder.

¶33. Miss. Code Ann. § 99-19-5 (2000) provides:

On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.

¶34. In *Presley v. State*, 321 So.2d 309, 310 (Miss. 1975), this Court said:

The method of submitting an instruction dealing with a lesser-included offense varies with each case. In some cases it may be sufficient simply to point out that the lesser offense is the same except for the absence of some specific element. In others it may be necessary to include all the essential elements of the included offense as was done for the principal charge. However, the jury should not be instructed as to a lesser-included offense in such a way as to ignore the primary charge as this would be confusing to the jury. It is also true that if the evidence does not justify submission of a lesser-included offense, the court should refuse to do so. Unwarranted submission of a lesser offense is an invitation to the jury to disregard the law.

See *Grace v. State*, 375 So.2d 419, 420 (Miss. 1979).

¶35. Pierce requested that a manslaughter instruction be given to the jury. However, Pierce did not submit a jury instruction for manslaughter or provide any specifics to support a manslaughter instruction. Pierce did not advance which theory of manslaughter he believed to be applicable. The trial court did not have a manslaughter instruction before it on which to rule.

¶36. A lesser-included offense instruction for murder was clearly given which allowed the jury to find that if there was no robbery then the lesser-included offense of murder was proper, not capital murder. Nothing in the record or official trial transcript supports manslaughter. At trial, Pierce testified that he did not kill Ryals, and he presented an alibi defense that he was not at the scene of the crimes in question. No witness was called in support of manslaughter. Pierce did not advance under what theory he believed manslaughter was properly based on the evidence presented at trial.

¶37. We find that the issue is without merit. A lesser-included offense jury instruction of murder was given to the jury. The lesser-included offense of manslaughter was not supported by the evidence presented at trial. No manslaughter jury instruction or any specifics to support a manslaughter instruction was submitted by Pierce at trial for the trial court to consider or for this Court to review.

### IV. WHETHER THE JURY'S VERDICT OF CAPITAL MURDER WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶38. Pierce argues that the jury's verdict was against the weight of the evidence; and therefore, the trial court erred in denying Pierce's motion for new trial. On appeal, Pierce questions whether Collins and Veal were credible witnesses. Pierce alleges that the "only evidence that the jury could have relied upon to convict him was the testimony of Collins and Veal." Pierce argues "neither Collins nor Veal established the slightest conclusive proof that he committed the crime of capital murder."

¶39. Pierce primarily attacks Collins's credibility based on Collins's own admission that he had used crack cocaine and had been drinking at the time he witnessed the murder. Pierce also claims that he was not in an established relationship with Veal at the time of the crime. Pierce's testimony at trial contradicted Veal's testimony that Pierce told her that he had killed someone. The testimony of Pierce's mother and brother contradicted that of Veal' regarding whether Pierce called his mother inquiring if the police were looking for him.

¶40. The trial court has the discretion to set aside the jury's verdict and order a new trial only where the court is "convinced that the verdict is so contrary to the weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." *Roberts v. State*, 582 So.2d 423, 424 (Miss. 1991).

*See Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983).

¶41. This Court has held that "the motion for a new trial is addressed to the sound discretion of the trial court." *Burge v. State*, 472 So.2d 392, 397 (Miss. 1985). The credible evidence consistent with [a defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993). *See Van Buren v. State*, 498 So.2d 1224, 1228 (Miss. 1986). This Court stated it "will reverse only when it is convinced that the trial judge has abused his discretion." *Malone v. State*, 486 So.2d 360, 366 (Miss. 1986); *Quinn v. State*, 479 So.2d 706, 710 (Miss. 1985).

¶42. In *Benson v. State*, 551 So.2d 188, 193 (Miss. 1989), this Court held that factual disputes are properly resolved by the jury in a criminal prosecution and do not mandate a new trial. The jury is the trier of witness credibility. *Collier v. State*, 711 So.2d 458, 462 (Miss. 1998). Jurors are permitted to and have a duty to resolve conflicts in testimony they hear. *Groseclose*, 440 So.2d at 300; *Gandy v. State*, 373 So.2d 1042, 1045 (Miss. 1979). "[Jurors] may believe or disbelieve, accept or reject, the utterances of any witness." *Gandy*, 373 So.2d at 1045. There is no formula that dictates the juror's decision in resolving conflicts in testimony of the witness. *Id*.

¶43. This Court in *Carter v. State*, 743 So.2d 985, 989 (Miss. 1999), in addressing this same assignment of error raised by Pierce's co-defendant, Carter, stated as follows:

> The fact that the prosecution's eyewitness had some drug and alcohol problems and that one of them was drunk at the time of the shooting does not render them incompetent per se. The general trend is to reject rigid rules of incompetence in favor of admitting the testimony and allowing the triers of fact judge the weight to be given such evidence. *See e.g.*, *United States v. Blankenship*, 923 F.2d 1110 (5th Cir. 1991); *United States v. Killian*, 524 F.2d 1268m 1275 (5th Cir. 1975) (trial court did not abuse discretion in allowing witness to testify despite contention that he was a heavy user of drugs and suffered time to time from hallucinations); *White v. State*, 403 So.2d 331 (Fla. 1981); *People v. Burgos*, 243 Ill.App.3d 993, 184 Ill.Dec. 858, 614 N.E.2d 59, 63 (1993) (eyewitness testimony of witness in murder case was not unworthy of belief even though witness admitted that he had drunk beer on the night of incident and he and defendant were seeking to purchase marijuana at time of crime); *State v. Johnson*, 714 S.W.2d 752 (Mo.App.1986) (not error to allow eyewitness to testify even though he admitted to habitual drug use including lots of cocaine prior to killing); *State v. Hubbard*, 601 P.2d 929 (Utah 1979).

¶44. In the case sub judice, the jury as the trier of witness credibility and factual disputes determined that Pierce was guilty of capital murder. Collins testified that he knew Pierce, and he clearly saw Pierce at the liquor store when he heard shots fired. Collins described the clothing that Pierce was wearing at the time of the crime.

¶45. Veal also similarly identified the clothing worn by Pierce as that described by Collins. Veal further testified that she and Pierce have a child together, and they went together to Memphis on October 28, 1996, to stay with Pierce's brother. Veal testified that when she asked Pierce what was wrong with him he confided that he had killed a man at the liquor store because the man had seen him. The jury was able to weigh the testimony of the witnesses for both the State and the defense. We find that the jury, after deliberation, determined there was sufficient evidence on which to base a conviction for capital murder. This assignment of error is without merit.

## CONCLUSION

¶46. For theses reasons, the judgment of the Coahoma County Circuit Court is affirmed.

¶47. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IN ACCORDANCE WITH SECTION 97-3-21, SECTION 99-19-101, SECTION 47-7-3(1)(e), SECTION 47-7-3(1)(f) AND SECTION 47-5-139(1)(a), MISSISSIPPI CODE OF 1972, AS AMENDED, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. GEORGE PIERCE SHALL NOT BE ELIGIBLE FOR PAROLE DURING THE TERM OF SAID SENTENCE.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ. CONCUR.**

1. This Court affirmed Carter's conviction on August 5, 1999. *Carter v. State*, 743 So.2d 985 (Miss. 1999).

2. The building that had previously blocked the view from the house to the store had been torn down before October 28, 1996. The lot remained empty except for the concrete slab.