IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41603

| STATE OF IDAHO, | ) | 2015 Opinion No. 17 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 2, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BRIAN NEIL PRATT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

Judgment of conviction for two counts of delivery of a controlled substance and one count of trafficking in methamphetamine, <u>vacated</u> <u>and</u> <u>remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Brian Neil Pratt appeals from his judgment of conviction for two counts of delivery of a controlled substance and one count of trafficking in methamphetamine. For the reasons set forth below, we vacate and remand.

Pratt was charged with two counts of delivery of a controlled substance, I.C. § 37-2732(a)(1)(A); one count of trafficking in methamphetamine, I.C. § 37-2732B(a)(4)(C); and a persistent violator enhancement, which was later withdrawn. The matter proceeded to a jury trial. During voir dire, the district court explained that Pratt was charged with delivery of a controlled substance and trafficking in methamphetamine. During voir dire, a prospective juror indicated that he knew Pratt. When the prosecutor asked for details regarding how the prospective juror knew Pratt, the prospective juror explained, "I don't know about this case, but I got in trouble awhile back and same thing that he's in trouble kind of for. That's how I know

1

him." Pratt moved for a mistrial on the ground that the prospective juror's comment tainted the jury pool. Pratt argued that the prospective juror's comments implied that he knew Pratt through some sort of controlled substance delivery or events that occurred in the prospective juror's legal case. The state argued that the potential juror's comments did not rise to the level of tainting the entire jury pool because the potential juror did not indicate that he dealt with Pratt in his capacity as a methamphetamine dealer, but just stated that he knew Pratt and had faced similar charges as those Pratt was facing. In response to the state's comments, the district court held:

> Well, I agree. I think at this point in time there has not been sufficient information brought before the jury panel that I think we would--is something that could not be dealt with by way of a limiting instruction if necessary. I don't believe there have been adequate grounds shown at this time for the granting of a mistrial. [The prospective juror] did go far in his answer and if we could have perhaps controlled a little bit, but he indicated that he had been charged and that he knew Mr. Pratt through his prior action, but he doesn't really make direct accusations against Mr. Pratt for having been involved with delivery of controlled substance or anything of that nature.
> So I think we can deal with it adequately through the limiting instructions that I'm going to be providing to the jury once sworn, and so I'm going to deny the motion for mistrial and we can proceed with jury selection . . . .

The district court did not give a curative instruction to disregard the prospective juror's comment. Jury selection was completed and Pratt was ultimately found guilty of two charges of delivery of a controlled substance and one count of trafficking in methamphetamine. Pratt appeals, challenging the district court's denial of his motion for mistrial.

A decision on a motion for new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Pratt argues his constitutional right to a fair trial with an impartial jury was violated when the district court failed to give a curative instruction and denied Pratt's motion for a mistrial following the prospective juror's comment. A criminal defendant has a constitutional right to

2

trial by an impartial jury. U.S. CONST. AMENDS. V, VI, and XIV; IDAHO CONST. art. 1, §§ 7 and 13. A juror is presumed to be impartial absent some evidence of taint. *See Ross v. Oklahoma*, 487 U.S. 81, 86 (1988); *Lockhart v. McCree*, 476 U.S. 162, 184 (1986).

The state argues that the district court's denial of Pratt's motion for a mistrial was not in error because Pratt failed to show that the prospective juror's comments had a continuing impact on the trial. A response to voir dire questioning must have a lasting impact for there to be prejudice. *State v. Laymon*, 140 Idaho 768, 771, 101 P.3d 712, 715 (Ct. App. 2004). The purpose of voir dire is to ascertain any knowledge or biases of venire members. This process generally communicates the potential juror's bias or knowledge to the rest of the jury. This may reflect poorly on the defendant, but removing the potential juror benefits the defendant. In *Laymon*, in response to the trial court's questioning, a potential juror stated: "Well, I think he's guilty already. If he's guilty last week, he'll be guilty next week." *Id.* at 769, 101 P.3d at 713. The potential juror was removed, and the trial court issued a curative instruction. That instruction did not merely direct the venire members to disregard the potential juror's remark or inform them that the remark was not evidence. The trial court then specifically refuted the remark, informing the venire members that, in fact, the case involving the defendant during the prior week had been dismissed so the defendant had not been convicted of anything. This Court affirmed the denial of a mistrial because "there was no continuing impact on the trial." *Id.* at 771, 101 P.3d at 715.

Similarly, in another case before the Idaho Supreme Court, three prospective jurors expressed their opinions that the defendant was guilty of the charged crime. *State v. Ellington*, 151 Idaho 53, 68-70, 253 P.3d 727, 742-44 (2011). The Court held that three potential jurors expressing opinions of the defendant's guilt was insufficient to overcome the presumption that the jury was impartial, where the potential jurors did not sit on the jury panel and the court instructed the impaneled jury to decide the case based only on the evidence presented in the courtroom. *Id.* The Court further explained that the presumption of impartiality was not overcome because the jurors "did not receive any specific facts" as to why the jurors believed the defendant was guilty. *Id.* at 69, 253 P.3d at 743. In both *Laymon* and *Ellington*, the jurors only expressed opinions regarding the defendants' guilt and, in each of these cases, a timely and specific curative instruction was given to the juror to neutralize any taint. However, this case is different because the potential juror asserted facts, rather than his opinion, from which it could

3

be inferred that Pratt had previously been associated with the same criminal activity for which he was charged in this case and no specific curative instruction was given.

We hold that the prospective juror's assertion of personal knowledge of Pratt's past association with activity similar to that with which he was charged tainted the jury and was sufficient to overcome the presumption that each of the remaining jurors was impartial. We also agree with Pratt that (without a curative instruction from the district court) the jury remained tainted, and the prospective juror's comments had a continuing impact on the trial. Therefore, the district court should have granted Pratt's motion for a mistrial. Accordingly, we vacate Pratt's judgment of conviction for two counts of delivery of a controlled substance and one count of trafficking in methamphetamine and remand to the district court.

Judge LANSING, **CONCURS**.

Judge GRATTON, **DISSENTING.**

I respectfully dissent. I do not believe that the rather vague statement made by the prospective juror was damaging enough to overcome the presumption of juror impartiality. I do not agree with the majority bright-line delineation between so called opinion and fact statements. I do not agree with the Court's analysis of the curative or limiting instruction issue, given the manner in which the issue was addressed below. Finally, I fail to see any evidence that the prospective juror's statement had a "continuing impact on the trial."[1]

In his brief, Pratt cites to what are apparently the three principal cases in this area, *State v. Ellington*, 151 Idaho 53, 253 P.3d 727 (2011), *State v. Laymon*, 140 Idaho 768, 101 P.3d 712 (Ct. App. 2004), and *State v. Kilby*, 130 Idaho 747, 947 P.2d 420 (Ct. App. 1997). From his analysis of these cases, Pratt states that the key considerations "appear to be whether the jurors

---

[1]   [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Ellington*, 151 Idaho 53, 68, 253 P.3d 727, 742 (2011) (quoting *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007)).

were provided with a cautionary instruction to disregard the prejudicial statement and whether they learned anything specific from the potential juror's statement." I suppose that is a fair summary of the key considerations, and so will address each, however, in reverse order.

But, before addressing these considerations, it is important to remember the context in which they are applied. Jurors are presumed to be impartial.

> [T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.

*Ellington*, 151 Idaho at 69, 253 P.3d at 743 (quoting *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988)).

As further explained by the Idaho Supreme Court:

> The trial court does not need to find jurors that are entirely ignorant of the facts and issues involved in the case. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Ellington*, 151 Idaho at 69, 253 P.3d at 743 (quoting *State v. Hairston*, 133 Idaho 496, 506, 988 P.2d 1170, 1180 (1999)). Thus, the jurors that *sat* on this jury are presumed to be impartial. As I will discuss more fully below, the fact that the prospective juror with some apparent knowledge of Pratt did not sit on the jury is quite important,[2] but overlooked by the Court. In my opinion, Pratt has failed to overcome the presumption that the impaneled jury was impartial.[3]

A.     **Specific Facts Learned From the Prospective Juror's Statement.**

During voir dire, sometime after the prospective juror indicated that he knew Pratt, the prosecutor, in an attempt to avoid any prejudicial response, simply asked if this relationship would cause the juror to be partial:

---

[2]     *See Ellington*, 151 Idaho at 69, 253 P.3d at 743 ("None of the jurors who expressed the opinions on Mr. Ellington's guilt that are at issue on appeal actually sat on the jury.").

[3]     *See Ellington*, 151 Idaho at 70, 253 P.3d at 744 ("Thus, Mr. Ellington has not shown that the expressions of the three prospective jurors that Mr. Ellington was guilty overcome the presumption that the impaneled jurors were impartial, and to that end he cannot show a violation of his due-process rights.").

5

| | |
|---|---|
| Prosecutor: | [Prospective Juror], without telling me exactly the nature of your relationship with Mr. Pratt, would that relationship cause you concern about sitting in this case as -- |
| Prospective Juror: | I don't know about this case, but I got in trouble awhile back and same thing that he's in trouble kind of for. That's how I know him. |
| Prosecutor: | So do you think you would be better suited for a different type of jury maybe -- |
| Prospective Juror: | Maybe. |
| Prosecutor: | -- where you didn't know the defendant? |
| Prospective Juror: | Maybe, yes, Ma'am. |
| Prosecutor: | I think based on that we are going to ask that [the prospective juror] be excused for cause, your Honor. |
| The Court: | Any objection, [defense counsel]? |
| Defense Counsel: | No objection, your Honor. |
| The Court: | Well, [prospective juror], we'd like to--as you can imagine, kind of not have those issues potentially cloud a jury selection process and on through a deliberation. So this probably is a case that you should probably not sit on. So I'm going to grant you and excuse you from further participation on this jury panel. |

Pratt argues that the statement implied that the prospective juror knew Pratt through some sort of controlled substance delivery or events incident to the prospective juror's former legal trouble. The majority here agrees, finding that it "could be inferred that Pratt had previously been associated with the same criminal activity for which he was charged in this case." I do not disagree that the statement could lead to an inference that Pratt had previous interactions with those involved in the drug milieu. I do not agree that we should or are required to simply adopt the most damaging or prejudicial inference. As I will discuss more fully below, in my view, this rather vague statement says nothing of "fact" about Pratt. Before I get there, however, I will address my strong disagreement with the notion that the prejudicial impact of a statement, in this context, depends upon whether it is characterized as a statement of opinion or a statement of fact.

The majority reviews *Laymon* and *Ellington*, and distinguishes those cases on the basis of a dichotomy between expression of opinion and assertion of fact, stating: "In both *Laymon* and *Ellington*, the jurors only expressed opinions regarding the defendants' guilt and, in each of these cases, a timely and specific curative instruction was given to the jury to neutralize any taint. However, this case is different because the potential juror asserted facts, rather than his opinion, from which it could be inferred that Pratt had previously been associated with the same

6

criminal activity for which he was charged in this case and no specific curative instruction was given." First, I do not read these cases, including *Kilby*, for the proposition that when considering a motion for mistrial because of a prospective juror's statement, an expression of opinion is not considered harmful whereas an expression of fact is. Second, I think that such a distinction is quite illusory, as I believe is evident from these cases.

In *Kilby*, a prospective juror in a sexual abuse case burst out that Kilby was a pedophile. In holding Kilby was not denied a fair trial, we correctly reasoned that the juror was excused and the remaining jurors were instructed to ignore the comment, which we presumed they followed. *Kilby*, 130 Idaho at 751, 947 P.2d at 424. This case appears to be the clearest as a true statement of opinion. There is no indication that the prospective juror had any factual basis to make the allegation. However, this Court did not deem the statement to be un-offensive, as a statement of opinion, but focused on the important fact that the prospective juror was excused and the impaneled jury properly instructed.

In *Laymon*, a prospective juror in Laymon's petit theft case, stated that she had been disqualified from the jury pool the week before in Laymon's trial for possession of controlled substances. She said she was biased against Laymon because of the drug relationship, and stated that "well, I think he's guilty already. If he's guilty last week, he'll be guilty next week." *Laymon*, 140 Idaho at 769, 101 P.3d at 713. After denying the motion, the district court gave an elaborate curative instruction which included an explanation that the defendant had not been convicted in the past week's controlled substance case because the case was dismissed, based on the previous court's decision as to the admissibility of a piece of evidence into that trial; and that the petit theft case did not involve drugs. The juror who made the comments was removed for cause and did not sit on the jury.

> On review of the denial of the motion for mistrial this Court noted:

> [T]here is no evidence that the jury here did not follow the trial court's instructions. The potential juror who uttered the statements at issue was removed, and there is no evidence that her statements had but a passing, inconsequential effect on the remaining pool members. There is also nothing in the record to show that the potential juror's views about the previous week's aborted trial had a continuing impact on Laymon's petit theft trial.

*Id.* at 771, 101 P.3d at 715. The factual and harmful information provided to the jury in *Laymon* goes well beyond the majority's description of the case as a mere expression of the juror's

opinion of guilt. There, the jury knew as a <u>fact</u> from the court itself that Laymon had been charged and on trial the week before for a drug offense, and that it had been dismissed based upon an evidentiary ruling, not a jury acquittal. Yet, we determined that the information regarding Laymon's drug case, as well as the prospective juror's opinion of guilt, had a "passing, inconsequential effect on the remaining pool members." *Id.* I submit that the information regarding the past week's drug case was a specific fact, even though the juror's expression of guilt may have been opinion, and thus, great care must be had in drawing a line between fact and opinion. I further believe that the harm from the fact of the drug case information in *Laymon* was greater than any harm from the inference at play here.

In *Ellington*, the district court asked the jury pool if anyone had formed an opinion that Ellington was guilty. A prospective juror indicated that he had "read about it in the papers" and believed that Ellington was guilty. *Ellington*, 151 Idaho at 68, 253 P.3d at 742. Another juror indicated she had a conversation with the victim's aunt the day after the incident occurred and was "on her side of him being guilty." *Id.* at 69, 253 P.3d at 743. A final juror stated that he had already formed an opinion based on the news he had read in the papers and seen on television "such that he could not give Mr. Ellington a fair trial." *Id.* at 68-69, 253 P.3d at 742-43. The Supreme Court stated that "at worst, the jurors who actually deliberated received a second-hand opinion from the prospective jurors," and that "they did not receive any specific facts as to why, other than that the prospective jurors read about it in the paper and in one instance interacted with a member of the Larsen family." *Id.* at 69, 253 P.3d at 743. The Supreme Court looked to "specific facts" learned and did not engage in a discussion of inference or implication. *Id.* Yet, the implication from the prospective jurors is quite clear. As a matter of fact, the two jurors who learned of the case in the media actually formed their opinion of guilt from that information. Most assuredly, the implication is that the information reported in two separate media sources was, at least, suggestive of his guilt. More important is the implication conveyed by the prospective juror who spoke with the victim's aunt. The prospective juror testified that on the day of the incident,[4] "one of the aunts related the [sic] Larsen family told about this incident and gave her informative opinion and we had a discussion about it. So I'm unfortunately on her side of him being guilty." *Id.* at 69 n.13, 253 P.3d at 743 n.13. This prospective juror's opinion of

---

[4] At one point in the opinion the Court states that the conversation was the day after the incident and at another it states that the conversation was on the day of the incident.

guilt was based upon information actually provided by a family member of the victim. So it must be inferred that the information discussed was sufficient to have convinced the aunt and then the prospective juror of Ellington's guilt. These are not mere baseless expressions of opinion.

Here, after first finding that a drug relationship "could be inferred" from the prospective juror's statement, the majority takes it one step further, concluding: "We hold that the prospective juror's <u>assertion of personal knowledge of</u> Pratt's past association with activity similar to that with which he was charged, tainted the jury and was sufficient to overcome the presumption that each of the remaining jurors was impartial." (Emphasis added). Therein lies the problem. The fact is the prospective juror conveyed no "specific fact" regarding Pratt at all, much less an "assertion of knowledge of Pratt's past [drug] association."

So, there is no bright line between assertions of fact and opinion. This case is not distinguishable from *Laymon* and *Ellington* on that basis. An "inference" is not an "assertion of personal knowledge." The potential juror's comment conveyed no fact about Pratt. Moreover, the statement in this case, just facially compared with the statements in the other cases, is no stronger in terms of its potential lasting effect on the trial or overcoming the presumption of impartiality of the sitting jurors.

## B. Curative or Limiting Instruction

I agree that a definitive curative instruction given immediately following a clearly inappropriate statement during voir dire goes a very long way toward curing any lasting harm. An immediate curative instruction is rather easily discerned and given when there is a contemporaneous motion for mistrial (*Laymon*); the expression of guilt is in response to a court question (*Ellington*); or the prospective juror yells out that the defendant is a pedophile (*Kilby*). But the facts here are different and overlooked by the majority.

Note that the prospective juror was immediately dismissed for cause on motion of the prosecutor. It is evident the request from the prosecutor to excuse the juror was for the prospective juror having personally known Pratt, not for any statement made by that juror. Defense counsel indicated that the defense had no objection to the dismissal and made no comment and registered no objection to the statement made by the prospective juror.

After the district court excused the prospective juror, jury selection continued. A replacement juror was seated and, after some discussion, was allowed to reschedule service due

9

to back problems. Another replacement juror was seated and the court inquired of that juror. At that point, the court indicated to the prosecutor that questioning could continue, but that a break would be taken at 10:00 a.m.

The prosecutor then began asking specific questions of different potential jurors. Then, the prosecutor asked general questions including whether anyone would find law enforcement officers more or less credible and if anyone had a friend or family member that had been involved with controlled substances. Next, the prosecutor turned to asking how the prospective jurors obtained news. The prosecutor then talked to the jury briefly about the NCIS television show and expectations of what the jury should expect in the local case. The prosecutor then asked about previous jury experience, talking to three prospective jurors about their jury experiences. The prosecutor then asked if any of the jurors knew anyone in the room. Thereafter, the district court indicated that it was time to take the recess. The court informed the potential jurors that "at this point in time, Ladies and Gentlemen, you have not heard any evidence, so there's really not much to talk about at this point in time." The jury panel was then excused for the break. While the transcript does not indicate elapsed time, it is quite clear that a substantial amount of time lapsed from when the prospective juror was excused until the recess was taken.

It is evident that it was during the morning recess that defense counsel moved for a mistrial. The majority states that "the district court did not give a curative instruction to disregard the prospective juror's comment." I fail to see how the court was to effectively, timely, and specifically do so. Defense counsel said nothing about the statement until the break, well after substantial proceedings had occurred. At that point, even if the court was requested to do so, which it was not, it would be virtually impossible for the court to construct a statement-specific curative instruction without simply restating and highlighting the allegedly offending statement. What the court could do, short of mistrial, is rely on the more general limiting instructions, which is exactly, as discussed below, what the court did. Thus, this situation is unlike the cases discussed above where a contemporaneous motion was made, or the statement was an expression of guilt in response to the court's question, or was a pejorative and disruptive blurt. So, unless this Court is holding that the district court, under these circumstances, was required to immediately sua sponte give a statement-specific curative instruction, with which I

10

would not agree, then defense counsel's failure to timely request such an instruction cannot be a basis for reversing the district court.

The fact here is that defense counsel argued against any limiting instruction by stating that he did not feel that there was "a limiting instruction that you can give to the jury that is going to un-ring that bell essentially saying--or the implication was that he had been in trouble for similar charges of delivery and that those charges and that event are how he knows Mr. Pratt." Aside from the fact that it was too late to go back and address the specific comment, defense counsel did not even request a more general instruction from the court to the effect that nothing said in the course of jury selection could be considered by the jury during deliberations. After considering the arguments, the district court indicated that the statement did not warrant a mistrial and could be dealt with through limiting instructions. Even though Pratt did not request any such instructions, the court stated that it was going to give limiting instructions to the jury once sworn.

Once the jury was sworn in, the district court took a recess, but first instructed the jury as follows:

> In the meantime, we really have not had any evidence take place yet during the course of this morning, that evidence will start this afternoon, so please don't think about the case at this point in time, and let's just come back with a clean slate this afternoon when we will be able to start hearing the evidence.

Thus, the jurors who sat on Pratt's case were expressly told that they had not yet heard any evidence and the trial should start with a clean slate. After the recess, the district court read the limiting instructions to the jury. Included in those instructions was the following:

> The law requires that your decision be made solely upon the evidence before you, neither sympathy nor prejudice should influence you in your deliberations. Faithful performance by you of these duties is vital to the administration of justice.
> In determining the facts, you may consider only the evidence admitted in this trial. The evidence consists of the testimony of the witnesses, exhibits offered and received, and any stipulated or admitted facts.

This same instruction was given before the jury deliberated. The *Ellington* Court expressly noted that "the impaneled jurors were instructed at the end of voir dire that they were to decide the case only based on the evidence presented in the courtroom. They were again instructed of this duty before their deliberations." *Ellington*, 151 Idaho at 69, 253 P.3d at 743. We presume

11

that the jury follows the district court's instructions. *See Kilby*, 130 Idaho at 751, 947 P.2d at 424; *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Even assuming the jurors who actually sat in Pratt's case perceived the prospective juror's comments as indicating Pratt had previously been involved with controlled substances, and from this would have used the comment in finding Pratt guilty, the jury was told twice that it had not heard any evidence during voir dire, and then told to only decide Pratt's case based on the evidence presented at trial. Without some other indication that these jurors were biased, in my opinion, Pratt has failed to overcome the presumption that the jury was impartial.

## C.      Continuing Impact on the Trial

The *Ellington* Court placed considerable importance upon the fact that the prospective juror was excused. *Ellington*, 151 Idaho at 69, 253 P.3d at 743 ("None of the jurors who expressed the opinions on Mr. Ellington's guilt that are at issue on appeal actually sat on the jury."). In this regard, the Court distinguished a case relied on by Ellington, *State v. Hauser*, 143 Idaho 603, 150 P.3d 296 (Ct. App. 2006):

> Mr. Ellington here makes no challenge to any specific juror who was not dismissed for cause that he believes should have been. Instead he focuses his challenge on appeal on the denial of the motion for mistrial, which assigned error only in the statements of the three prospective jurors, none of whom sat on the jury. Because those prospective jurors were all dismissed, the holding of *Hauser* does not apply here.

*Ellington*, 151 Idaho at 69 n.14, 253 P.3d at 743 n.14.

The principal focus of the *Ellington* opinion appears to be on the "actual" jury. The Court stated:

> Under the U.S. Supreme Court's and this Court's case law, Mr. Ellington has not overcome the presumption that the jury was impartial. "Where a defendant does not allege or cannot demonstrate that a member of his or her jury was biased or prejudiced, a due process challenge must fail." *State v. Santana*, 135 Idaho 58, 64, 14 P.3d 378, 384 ([Ct. App.] 2000).

*Ellington*, 151 Idaho at 69-70, 253 P.3d at 743-44 (footnote omitted). Thereafter, the Court analyzed the "only allegations" Ellington provided that "an actual member of the jury" was biased. That evidence consisted of two actual jury members who had a connection to a physical-therapy clinic at which a victim had received treatments. The Court held that "particularly within the framework of Mr. Ellington's motion for mistrial, he has not shown in any way that

12

these actual jury members had been influenced by the three prospective jurors' statements during voir dire." *Id.* at 70, 253 P.3d at 744. The same holds true in this case. Pratt has not alleged or shown in any way that any actual jury member was influenced by the lone statement of the dismissed prospective juror, and thus, was biased or prejudiced. Thus, Pratt has not overcome the presumption that the impaneled jurors were impartial or the presumption that they followed the court's instructions. The challenged statement did not have a continuing effect on the trial. Viewed retrospectively, the district court's decision to deny the motion for mistrial did not constitute reversible error.